JAY GAIRSON
Gairson Law, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE<br><br>        Plaintiff,<br><br>        v.<br><br>KRISTI NOEM, *et al.*<br><br>        Defendants. | No. 2:25-cv-00633<br><br>Emergency Motion for Temporary Restraining Order<br><br>**NOTE ON MOTION CALENDAR:**<br>April 15, 2025, End of Business<br><br>ORAL ARGUMENT REQUESTED |

I.      **INTRODUCTION**

Plaintiff John Doe, a Chinese F-1 doctoral student at the University of Washington ("UW"), respectfully moves this Court for a Temporary Restraining Order ("TRO") to prevent imminent and irreparable harm arising from the abrupt termination of his Student and Exchange Visitor Information System ("SEVIS") record and the threat of detention or removal based solely on a pending Driving Under the Influence ("DUI") charge. Specifically, Plaintiff seeks an order:

1. Enjoining DHS from enforcing the termination of his SEVIS record so as to preserve his F-1 student status until this matter is resolved on the merits; and

Emergency Motion for Temporary Restraining Order – 1
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

2. Enjoining the Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE") from detaining or removing him from the United States based on the SEVIS termination and/or his pending DUI case.

These requests rest on the Fifth Amendment's Due Process Clause and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C), (D), given that Defendants failed to follow their own regulations and failed to provide any notice or opportunity to be heard before effectively stripping Plaintiff of his lawful student status. Plaintiff meets all factors for emergency relief.

First, Plaintiff is likely to succeed on his due process and APA claims because Defendants' automatic termination of an F-1 student's status solely due to a prudential visa revocation or a pending misdemeanor arrest exceeds the agency's authority, is procedurally flawed, and violates fundamental fairness. Second, Plaintiff faces irreparable harm absent a TRO, including a risk of detention, removal, and academic expulsion. Third, the balance of equities sharply favors Plaintiff: enjoining Defendants merely preserves the status quo while imposing little burden on the government. Fourth, the public interest is served by ensuring that the government complies with the law and that international students—significant contributors to the nation's academic and research community—are afforded due process.

Accordingly, Plaintiff respectfully requests that the Court grant his Motion for a Temporary Restraining Order, maintain his lawful F-1 status, and enjoin any detention or removal pending further proceedings related to this termination of status.

Emergency Motion for Temporary Restraining Order – 2
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

1  **II.  FACTUAL BACKGROUND**

2  The following facts are supported by the Complaint, the Declaration of John Doe ("Doe

3  Decl."), the Declaration of his criminal defense counsel, Robert Ault ("Ault Decl."), and the

4  accompanying exhibits.

5  A.  Plaintiff's F-1 Status and Pending DUI Charge

6  Plaintiff is a citizen of China who has resided lawfully in the United States in F-1

7  student status since 2021. Compl. ¶¶ 1–2; Doe Decl. ¶¶ 6–7. He is enrolled in a doctoral

8  program at UW and has remained in good academic standing. Compl. ¶¶ 7, 20. In September

9  2023, Plaintiff was arrested in Washington State and charged with a misdemeanor DUI under

10  state law. He pleaded not guilty and his case is still pending. Compl. ¶ 26; Ault Decl. ¶¶ 2–3.

11  The maximum penalty for a DUI is 364 days and it is not a crime of violence. Compl. ¶ 32;

12  Ault Decl. ¶ 3. Plaintiff continued to meet all F-1 requirements, including full-time enrollment

13  and attending classes while his criminal charge is pending. Doe Decl. ¶¶ 11.

14  B.  SEVIS Record Termination Without Notice

15  On April 7, 2025, Plaintiff received an email from the University of Washington's

16  Director of International Student Services stating, "we have discovered that as of today,

17  04/07/2025, your SEVIS record and I-20 were marked as 'terminated' by the Student &

18  Exchange Visitor Program (SEVP)". Compl. ¶ 29; Doe Decl. ¶ 8; Exhibit B. The email further

19  stated that his SEVIS record was terminated for, "Otherwise failing to maintain status –

20  individual identified in criminal records check and/or has had their VISA revoked." Exhibit B;

21  Comp. ¶ 30; Doe Decl. ¶ 8; Exhibit B.

22

Emergency Motion for Temporary Restraining Order – 3
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington  98108
(206) 357-4218

Plaintiff received no pre-termination notice or explanation from DHS or ICE, and his school was not consulted regarding his criminal case. Compl. ¶ 34; Doe Decl. ¶ 9. Further, although the email references a possible student visa revocation, Plaintiff has not received any notice from the Department of State indicating that his visa has been revoked. Doe Decl. ¶ 9. With SEVIS terminated, Plaintiff is flagged in DHS systems as out-of-status, meaning DHS considers him no longer authorized to study or remain in the U.S., despite his ongoing academic program and absence of any criminal conviction. Compl. ¶¶ 30.

### C. Threat of Detention and Removal

Plaintiff is reasonably concerned that ICE will seek to apprehend him as a result of his SEVIS termination. Doe Decl. ¶¶ 3-4. With Plaintiff's SEVIS record terminated and his visa expired, ICE views him as deportable for failure to maintain status. Compl. ¶ 36. Although he has not yet been taken into custody, his continued presence is precarious. If apprehended, Plaintiff could be detained, placed in removal proceedings and potentially removed to a foreign country other than China, despite the fact that driving under the influence is generally not a deportable offense. Here, however, the only available basis for removal would be the Defendants' termination of Plaintiff's SEVIS status causing Plaintiff to be out of status and accruing unlawful presence – not a conviction or other grounds of removability. Plaintiff understandably fears that he may be arrested at any time, especially since DHS records reflect that he is now out-of-status due to his SEVIS being terminated. Doe Decl. ¶ 4.

### D. Harm from Loss of Status

The consequences of SEVIS termination have already begun to materialize. Plaintiff's ability to participate in his doctoral program has been placed on hold until he is reinstated. Doe

Emergency Motion for Temporary Restraining Order – 4
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

Decl. ¶ 5. His doctoral program is grant-funded and he is unable to carry out his research while his SEVIS is terminated. *Id*. As a result, he is at risk of not being able to carry-out time sensitive research and grant reporting, which would jeopardize both his education and his program. *Id*. His education, research project, funding, and professional future are all in jeopardy. He is also automatically accruing "unlawful presence," which could result in multi-year bars on reentry, derailing his academic and career paths. 8 U.S.C. § 1182(a)(9)(B); Compl. ¶ 18. DHS procedures for administrative reinstatement of SEVIS status are lengthy and uncertain, and there is no guarantee that ICE will defer removal action in the meantime. If detained, Plaintiff would absolutely be forced to abandon his doctoral work, causing irreparable harm to his education and professional development. Doe Decl. ¶ 5.

E. Lack of Opportunity to Be Heard

At no point did Defendants afford Plaintiff notice or a chance to challenge the basis for his SEVIS termination. Compl. ¶¶ 1, 34; Doe Decl. ¶ 9. The sole stated reasons visa revocation or a criminal records check are *ex parte* decisions. Compl. ¶¶ 29-30. Seeking urgent relief to maintain the status quo and prevent removal, Plaintiff filed this Motion as soon as possible after his Complaint. A similar TRO was recently granted in another district under analogous circumstances, underscoring that immediate injunctive relief is warranted here. *Liu v. Noem*, No. 1:25-cv-00133, Doc. 13 (Dist. NH, Apr. 10, 2025).

III. **JURISDICTION AND LEGAL STANDARD**

This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and the APA. Compl. ¶¶ 5–6, 2. Judicial review is available

Emergency Motion for Temporary Restraining Order – 5
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

1  under the APA, 5 U.S.C. § 702 et seq., to challenge final agency actions, including the

2  termination of Plaintiff's SEVIS record. Compl. ¶¶ 15–19, 37–42. Because Plaintiff is not

3  challenging a final order of removal and raises due process and procedural violations collateral

4  to removal proceedings, the jurisdictional restrictions of 8 U.S.C. § 1252 do not apply. *Jie Fang*

5  *v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 186 (3d Cir. 2019).

6  Under Ninth Circuit law, courts employ identical standards to evaluate whether to issue

7  a temporary restraining order or a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John*

8  *D. Brush & Co., 240 F.3d 832, n.7* (9th Cir. 2001), and *McCarthy v. Servis One, Inc*. 2017 WL

9  89422, *4 (N.D. Cal. Mar, 7, 2017). Accordingly, a movant must demonstrate (1) a likelihood

10  of success on the merits—or, alternatively, raise serious questions regarding the merits under a

11  sliding-scale approach; (2) a likelihood of harm to the movant in the absence of preliminary

12  relief; (3) that the balance of equities tips in the movant's favor; and (4) that granting the TRO

13  is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th

14  Cir. 2011); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); W*inter v. Nat. Res.*

15  *Def. Council, Inc.*, 555 U.S. 7 (2008). Moreover, when the government is the opposing party,

16  the assessment of harm to the opposing party and weighing the public interest merge and are

17  considered together. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

18  Alternatively, in the Ninth Circuit, courts can also apply a "sliding scale" approach: if

19  the movant can show that there are serious questions going to the merits – a lesser showing

20  than likelihood of success on the merits – then a temporary restraining order or preliminary

21  injunction may still issue if the balance of hardships tips sharply in the plaintiff's factor, and the

22

Emergency Motion for Temporary Restraining Order – 6
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington  98108
(206) 357-4218

1  other two factors are satisfied. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32

2  (9th Cir. 2011).

3

4  IV.   <u>ARGUMENT</u>

5      A.   <u>Plaintiff Is Likely to Succeed on the Merits</u>

6          1.   <u>Due Process Violation (Fifth Amendment)</u>

7  Noncitizens physically present in the United States are "persons" entitled to due process

8  protections. *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903); *Shaughnessy v. United States ex*

9  *rel. Mezei*, 345 U.S. 206, 212 (1953). Procedural due process generally requires notice and an

10  opportunity to be heard before the government deprives a person of a significant liberty or

11  property interest. *Shaughnessy*, 345 U.S. at 228.

12          *i.*   ***Deprivation of Protected Interest***

13  F-1 status enables a noncitizen to live and study in the U.S., carrying substantial

14  educational and reputational benefits. Compl. ¶¶ 15, 20-24; Doe Decl. ¶ 6. Termination of the

15  Plaintiff's student status has immediately made him out of status, which requires him to

16  promptly stop his studies and research. Furthermore, he is now accruing unlawful presence,

17  which places him at imminent risk of detention and removal. The termination of his status and

18  the ramifications of that termination plainly implicate constitutionally protected interests.

19          *ii.*   ***No Notice or Hearing***

20  Defendants have not given Plaintiff notice or chance to contest the basis for termination.

21  (Compl. ¶¶ 30–31, 34; Doe Decl. ¶¶ 9-10.) A *post hoc* removal hearing does not cure the initial

22  deprivation. An immigration judge lacks the authority to reinstate an F-1 student because

Emergency Motion for Temporary Restraining Order – 7
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

1   reinstatement of nonimmigrant status is an administrative remedy governed by 8 C.F.R. §§
2   214.1-241.2, and not a judicial function under removal proceedings as defined in INA § 240.
3   Therefore, an F-1 student must seek reinstatement through the federal courts or the USCIS
4   administrative process, rather than through the immigration court.

                                                                *iii.*     ***Presumption of Guilt***

6   Defendants have effectively presumed that Plaintiff is guilty of a crime of violence, due
7   to a DUI arrest that is still being processed in court, which is *per se* not a formal finding of
8   wrongdoing or a ground of deportability. *Cf. Leocal v. Ashcroft*, 543 U.S. 1, 4 (2004) (holding a
9   DUI is not necessarily a crime of violence for immigration purposes); *In re Torres-Varela*, 23
10  I&N Dec. 78 (BIA 2001) (furthermore multiple DUI convictions fail to be a crime in involving
11  moral turpitude); *see* 8 U.S.C. § 1227(a).

12  Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), Plaintiff's private interest is high, the
13  risk of erroneous deprivation is substantial, and the government's interest in summary
14  termination is minimal given the availability of less drastic measures (e.g., monitoring, a notice
15  of intent to terminate, or waiting for the criminal case outcome). Plaintiff therefore shows a
16  strong likelihood of success on his Fifth Amendment claim.

                            2.     <u>APA Violations (5 U.S.C. § 706(2)(A), (C), (D))</u>

18  Plaintiff also has a strong likelihood of success on his claims under the APA:

                                                              *i.*     ***Agency Action Exceeding Statutory Authority***

20  A foreign national may enter and remain lawfully in the United States under an F-1
21  student visa if admitted to a program of study at an institution certified by the Student and
22  Exchange Visitor Program (SEVP) and in possession of a valid Form I-20 issued by that

Emergency Motion for Temporary Restraining Order – 8
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

1  school. INA § 101(a)(15)(F)(i); 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f)(1)(i). The

2  Form I-20 serves as evidence of SEVIS (Student and Exchange Visitor Information System)

3  registration, reflecting the student's eligibility to attend the institution and maintain lawful

4  status by pursuing a full course of study. 8 C.F.R. §§ 214.2(f)(5)(i), 214.3(k). Upon lawful

5  entry, an F-1 student is admitted for "duration of status" (D/S), meaning the student remains

6  lawfully present as long as they adhere strictly to regulatory requirements, including continuous

7  enrollment and compliance with employment restrictions. 8 C.F.R. § 214.2(f)(5)(i); USCIS

8  Policy Manual, Vol. 2, Pt. F, Ch. 6. Agencies typically terminate a student's SEVIS record only

9  for enumerated grounds such as failure to enroll full-time or engaging in unauthorized

10 employment. 8 C.F.R. §§ 214.2(f), 214.1(d)-(g). Furthermore, agencies virtually never

11 terminate a student's SEVIS record except by notification to the school's Designated School

12 Official (DSO) instructing the DSO terminate the student or when the student has been placed

13 in removal proceedings. It is also important to note a student's existing F-1 status and SEVIS

14 record is not automatically terminated when the student's visa expires or the Department of

15 State revokes the visa. Indeed, 8 U.S.C. § 1201(i) allows the State Department to revoke a visa

16 without extinguishing the admitted student's lawful status; removal proceedings require

17 separate showings under the INA. *Jie Fang v. Dir. ICE*, 935 F.3d 172, 180–82 (3d Cir. 2019).

18      If a student violates conditions of status—such as unauthorized employment, conviction

19 of a crime of violence punishable by imprisonment greater than one year, or unauthorized drop

20 below a full course of study—the student's SEVIS record must be promptly terminated by the

21 school's DSO, immediately ending lawful status and resulting in the student's immediate

22 accrual of unlawful presence. 8 U.S.C. §§ 1227(a)(1)(C)(i), 1227(a)(2); 8 C.F.R. §§ 214.2(f)(5)

Emergency Motion for Temporary Restraining Order – 9
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

(iv), 214.3(g)(2). Upon SEVIS termination, the student instantly becomes out of status, losing all employment authorizations and student privileges. *See* SEVIS Help Hub, Termination Reasons and Consequences[1] (Last Updated April. 9, 2025) (notably lack guidance on students with criminal convictions or arrests); USCIS Policy Memo PM-602-1060.1. At this point, the student must either depart the United States immediately or apply for reinstatement of status through USCIS, a discretionary process generally available only if the violation occurred under circumstances beyond the student's control and the student has been out of status fewer than five months. 8 C.F.R. § 214.2(f)(16); USCIS Policy Manual, Vol. 2, Pt. F, Ch. 4 and Ch. 8. Failure to maintain status also renders the student deportable under INA § 237(a)(1)(C)(i) (8 U.S.C. § 1227(a)(1)(C)(i)), and potentially triggers immigration enforcement actions, including removal proceedings and visa revocation. *See, e.g., Matter of Yazdani*, 17 I&N Dec. 626 (BIA 1981).

### ii.     *Arbitrary and Capricious Action*

Even if DHS retained some discretion to terminate, its summary action here was arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983) (an agency must examine all relevant data and factors, articulate a satisfactory explanation for its decision that includes "a rational connection between the facts found and the choice made", and avoid reliance on factors that Congress did not intend the agency to consider or address). DHS failed to consider Plaintiff's individual facts as evidenced by the multitude of similar cases being filed nationwide, gave no reasoned explanation for termination, and departed from

---

[1] Available at https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last checked Apr. 11, 2025).

Emergency Motion for Temporary Restraining Order – 10
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

agency guidance and regulations on when a student's SEVIS status should be terminated. Compl. ¶¶ 37–42.

### iii. Procedural Violations

DHS acted without observance of procedure required by law by terminating Plaintiff's SEVIS record based on an unproven criminal allegation without first notifying either the DSO or Plaintiff and allowing a response. 5 U.S.C. § 706(2)(D). Plaintiff has not done any of the acts that warrant automatic termination, such as fraud in acquisition of status or having a conviction for a crime of violence. As a result, authority tends to rest with the DSO to report, "Any disciplinary action taken by the school against the student as a result of the student being convicted of a crime[.]" 8 C.F.R. § 214.3(g)(2)(ii)(D). Plaintiff has not been convicted of a crime and, as a result, no report by the DSO was required. Instead, the agency or its agents acted *ultra vires* by terminating the Plaintiff's status due to his being "identified in criminal records check". Compl. ¶ 30. Here, DHS bypassed that framework by taking adverse action before verifying whether the alleged crime met the regulatory threshold for termination under 8 C.F.R. § 214.1(g) (convicted of a crime of violence) or was still pending without any conviction or final disposition.

Because the only crime-related termination triggers under the F-1 regulations are a conviction that leads to school discipline or a conviction of a crime of violence for which a sentence of greater than one year could be imposed, DHS was obliged to notify the DSO or Plaintiff if it suspected a criminal status violation and request additional information before terminating. 8 C.F.R. §§ 214.1(g), 214.3(g)(2)(ii)(D). By instead terminating on the basis of an arrest alone – without affording the Plaintiff an opportunity to demonstrate the case was

Emergency Motion for Temporary Restraining Order – 11
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

ongoing or unfiled – DHS deprived him of the standard notice and cure process guaranteed by the regulations and due process principles. *See e.g.,* 8 C.F.R. § 214.3(g)(2); and SEVP Broadcast Messages 2008-03 & 1603-01. Consequently, DHS's unilateral action contravenes both the letter and spirit of the governing SEVIS procedures, which require actual evidence of a conviction, not mere speculation.

Because Plaintiff has shown strong legal grounds (both constitutional and statutory) or, at minimum, "serious questions going to the merits," he satisfies this element for TRO relief.

B.      Plaintiff Faces Irreparable Harm Absent a TRO

Irreparable to the Plaintiff harm is "likely" and imminent. *See Winter,* 555 U.S. at 22. Being detained and removed is the ultimate irreparable harm – Plaintiff's entire doctoral career, future U.S. opportunities, future employment and academic research opportunities, and family and community ties would be destroyed. *See Nken*, 556 U.S. at 435 (acknowledging removal as a serious hardship); Compl. ¶¶ 21–22, 28; Doe Decl. ¶¶ 5, 12, 13.

Termination of SEVIS status will expel Plaintiff from UW, nullify nearly four years of doctoral work, and irreparably harm his educational trajectory. Compl. ¶ 1, 20, 29; Doe Decl. ¶ 5. No *post-hoc* damages can restore lost research, disrupted collaborations, and tarnished professional credentials.

Once Plaintiff's SEVIS status was terminated he was automatically considered out-of-status and started accruing unlawful presence. 8 U.S.C. § 1182(a)(9)(B).  Unlawful presence automatically prevents Plaintiff from changing to some other status or adjusting status through a qualifying petition. Furthermore, after accruing 180 or more days of unlawful presence, Plaintiff would have imposed a multi-year bar if he left the United States – as a result, an

Emergency Motion for Temporary Restraining Order – 12
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington  98108
(206) 357-4218

administrative application for reinstatement that regularly takes six or more months to adjudicate would result in a substantial bar on reentry when it was denied. These penalties cannot be undone later by mere monetary relief.

Indeed, in light of the assertions of the United States in other proceedings that the U.S. government is not required to return wrongfully deported individuals, the entire framework for analyzing stays in the immigration context should be reassessed. The Supreme Court in *Nken* expressly based its decision on the U.S. government's assurances that it would return wrongfully deported individuals. *Nken*, 556 U.S. at 435 ("Those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal"). The Government has now asserted that it need not do anything to return a man who the government admits it wrongly deported. *Noem v. Abrego Garcia*, Application to Vacate the Injunction at 12 (arguing that the injunction "should be vacated insofar as it requires the government to bring Abrego Garcia back to the United States"). As a result, the irreparable harm inquiry should heavily favor noncitizens like Doe who could face removal (potentially to a prison in El Salvador) without any possibility of redress.

Finally, violations of due process rights *per se* constitute irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) ("It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." (interior citations omitted)). Because Plaintiff demonstrates a likely due process violation, irreparable harm is presumed.

C. The Balance of Equities Tips Sharply in Plaintiff's Favor

On Plaintiff's side, the harm is drastic: possible detention, removal, disrupted education, loss of grants, loss of research opportunities, and permanent reputational damage. On

Emergency Motion for Temporary Restraining Order – 13
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

1  Defendants' side, a TRO imposes minimal burden. Defendants merely must preserve the status

2  quo—refrain from detaining or deporting Plaintiff due to overstay or the SEVIS termination

3  and pause the effectiveness of the SEVIS termination—while the Court resolves Plaintiff's

4  legal challenges. The government cannot credibly claim substantial harm in temporarily

5  allowing a single student to remain in the United States under existing F-1 conditions,

6  particularly since any perceived public safety threat is already addressed by his ongoing DUI

7  proceedings in state court. Compl. ¶¶ 26–27; Ault Decl. ¶ 3.

8        D.    <u>A TRO Serves the Public Interest</u>

9        "[I]t may be assumed that the Constitution is the ultimate expression of the public

10 interest." *Llewelyn v. Oakland Cnty. Prosecutor's Off.*, 402 F. Supp. 1379, 1393 (E.D. Mich.

11 1975). Here, a TRO promotes due process and proper administrative procedure, goals at the

12 core of our constitutional system. It also avoids undermining the missions of U.S. universities,

13 preserves the substantial benefits of international research and collaboration, and prevents

14 potential chilling of international student enrollment. Doe Decl.. ¶ 5.

15       Public safety is also not jeopardized. Plaintiff's DUI charge is being handled by the

16 Washington state court system. Ault Decl. ¶ 2. If he is ultimately convicted or deemed a danger,

17 the government can address that through lawful channels. Meanwhile, a TRO ensures

18 Plaintiff's case is heard fairly without precipitous removal or forced self deportation.

19       E.    <u>The TRO Should Bar Detention or Removal Pending Resolution</u>

20       To effectuate meaningful judicial review, a TRO must prohibit Defendants from

21 detaining or removing Plaintiff based on the disputed termination. Courts have found that

22 "where a plaintiff requests injunctive relief mandating that an agency comply with a process

Emergency Motion for Temporary Restraining
Order – 14
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington  98108
(206) 357-4218

that, if completed could secure plaintiff's freedom . . . the harm from detention surely cannot be remediated after the fact." *Ramirez v. U.S. ICE*, 310 F. Supp. 3d 7, 27–28 (D.D.C. 2018) (in the context of detention alternatives for detained teenagers). Absent such an injunction, the Court's jurisdiction and Plaintiff's opportunity to litigate would be illusory because Plaintiff could be removed before a merits determination and his grants and research would long have been lost. 5 U.S.C. § 705 (authorizing courts to "postpone the effective date of an agency action" pending review).

<u>No Bond or a Nominal Bond Is Appropriate</u>

Under Federal Rule of Civil Procedure 65(c), courts have wide discretion in setting the security amount. Where, as here, the litigation enforces important constitutional rights, courts often waive or impose only nominal bond. Defendants face no financial harm by merely postponing removal actions against a single student; thus, a nominal or $0 bond is justified.

**V.    CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion for a Temporary Restraining Order and:

1. Order Defendants to restore or otherwise reflect Plaintiff's F-1 status as active in SEVIS until a further hearing on a preliminary injunction;

2. Enjoin Defendants from detaining or removing Plaintiff based on his SEVIS termination or pending DUI arrest, and from enforcing the termination of his SEVIS record during the pendency of this matter; and

Emergency Motion for Temporary Restraining Order – 15
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

3. Set this matter for a prompt hearing on a preliminary injunction and allow Plaintiff to remain free from detention or removal, as well as remain in lawful student status for the limited duration of the TRO.

Respectfully submitted this 11th Day of April 2025,

GAIRSON LAW, LLC

/s/ Jay Gairson
_____
Jay Gairson, WSBA 43365

4606 Martin Luther King Jr Way S
Seattle, Washington 98108
Ph.     (206) 357-4218
Fax    (206) 357-4211
Em     jay@gairson.com

COUNSEL FOR PLAINTIFF JOHN DOE

Emergency Motion for Temporary Restraining Order – 16
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218

**Certificate of Service**

I certify that on April 11, 2025, I electronically filed the foregoing document, together with all attachments, with the Clerk of the Court for the Western District of Washington using the CM/ECF system. As it is presently after business hours, I will serve the United States Attorney via Personal Service first thing tomorrow morning. I have also sent a courtesy copy of this filing, together with all attachments and the Complaint in this matter, via email to Assistant U.S. Attorneys Alixandria Morris <Alixandria.Morris@usdoj.gov> and Michelle Lambert <Michelle.Lambert@usdoj.gov>.

/s/ Jay Gairson
_____
Jay Gairson, WSBA 43365

Emergency Motion for Temporary Restraining Order – 17
No. 2:25-cv-00633-DGE

GAIRSON LAW, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108
(206) 357-4218