JAY GAIRSON
Gairson Law, LLC
4606 Martin Luther King Jr Way S
Seattle, Washington 98108

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOHN DOE<br><br>    Plaintiff,<br><br>    v.<br><br>KRISTI NOEM, *et al.*<br><br>    Defendants. | No. 2:25-cv-00633-DGE<br><br>Plaintiff's Motion for Preliminary Injunction<br><br>**NOTE ON MOTION CALENDAR:**<br>May 1, 2025 @ 9:30 AM<br><br>ORAL ARGUMENT REQUESTED |

Plaintiff John Doe moves this Court, pursuant to Fed. R. Civ. P. 65(a), to issue a preliminary injunction extending the relief previously granted by the Temporary Restraining Order entered on April 17, 2025 and expiring May 1, 2025. Doc. 16 ("TRO") at 1. Specifically, Plaintiff requests that this injunction preserve his lawful F-1 student status under 8 C.F.R. § 214.2(f), maintain his Student and Exchange Visitor Information System ("SEVIS") record as "active," and prohibit Defendants from enforcing any removal, detention, or transfer arising out of the April 7, 2025 termination of his F-1 student record, I-20, or SEVIS status. TRO at 21-22. As the Court recognized when granting the TRO, Plaintiff "is likely to succeed on the merits"

Plaintiff's Motion for Preliminary Injunction – 1
No. 2:25-cv-00633-DGE

of his claims that Defendants' abrupt termination of his SEVIS record "violates the Administrative Procedure Act ('APA')", that he will suffer irreparable harm without injunctive relief, and that both "the balance of equities and the public interest favor an injunction." *Id*. at 1, 8-9, 21-22.

The requested preliminary injunction is prohibitory, not mandatory, because it maintains the last uncontested status quo preceding Defendants' unlawful termination of Plaintiff's status. Restoring Plaintiff's SEVIS record to active is not a final adjudication of the merits. Maintenance of Plaintiff's active SEVIS status simply ensures the parties remain in their positions prior to the unlawful April 7, 2025 termination. Such relief is warranted under settled law to avert irreparable harm and provide judicial review of final agency action.

I.      **Factual and Procedural Background**

   A.      Plaintiff's Lawful F-1 Status and Academic Standing

John Doe is a Chinese national who lawfully entered the United States on an F-1 student visa in 2021 and has been pursuing a doctoral program at the University of Washington ("UW"). He has maintained full-time enrollment, made normal progress toward degree completion, and remains academically in good standing. Compl. ¶¶ 7, 20. The University of Washington's Vice Dean of Research confirms that Doe has finished all required coursework and exams and needs only two to four months of laboratory work to defend his dissertation. Declaration of Shelly Sakiyama-Elbert ("Sakiyama-Elbert Decl." ¶ 3, Doc. 22). While his F1 visa stamp expired in 2022, Plaintiff's "duration of status" as an F-1 student has continued consistent with the regulatory requirements of 8 C.F.R. § 214.2(f)(5)(i). He was charged for a first-offense DUI misdemeanor in 2023; the charge remains pending and no conviction has

been entered. A DUI under Washington law does not meet the definition of a "crime of violence" under 8 C.F.R. § 214.1(g). *See* Ault Decl.; Wash. Rev. Code §§ 46.61.502(5); 46.61.5055; *see Leocal v. Ashcroft*, 543 U.S. 1, 11-13 (2004) (holding that a Florida DUI was not a "crime of violence").

B. <u>Termination of SEVIS Record</u>

On April 7, 2025, UW officials informed Plaintiff that his SEVIS record had been unilaterally terminated by Defendants. The sole explanation provided by the Student and Exchange Visitor Program ("SEVP"), overseen by DHS and ICE, for terminating Plaintiff's SEVIS status was: "Otherwise failing to maintain status – individual identified in criminal records check and/or VISA revoked." Declaration of Alisa Sweet ("Sweet Decl.") ¶¶ 17-20, Doc. 21; Doc. 7-2, Exhibit B. Plaintiff received no opportunity to respond, and there is no evidence that DHS followed the specific grounds for terminating SEVIS status under 8 C.F.R. § 214.1(d). Declaration of John Doe ("Doe Decl."), Doc. 7 ¶¶ 8-10. University of Washington officials first learned of the federal terminations only through their own internal audit and received no advance notice from SEVP. Sweet Decl. ¶¶ 5-6, 21-22. Seasoned DSO Erin Garcia states that in fourteen years of advising she has *never* seen the "Other" termination reason and has "never seen a mass termination . . . where no alert or notification was provided to DSOs". Declaration of Erin Garcia ("Garcia Decl.") ¶¶ 6-8, 10-11, Doc. 23.

Furthermore, a contemporaneous USCIS Notice of Intent to Deny issued in a separate Nebraska I-129 proceeding shows DHS is already treating these April 2025 terminations as status-ending: "[T]he beneficiary's SEVIS record . . . their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their

Plaintiff's Motion for Preliminary Injunction – 3
No. 2:25-cv-00633-DGE

1  F-1 visa. . . . It appears that the beneficiary is not in valid F-1 nonimmigrant status, as such, the

2  request for a change of status may not be approved." Declaration of Jay Gairson ("Gairson

3  Decl.") ¶ 3 & Ex. C, Doc. 25-1.

4  The termination of a SEVIS record constitutes final agency action. "For an agency

5  action to be final under the APA, the action must mark the 'consummation' of the agency's

6  decision-making process, and the action must determine a 'right[] or obligation[].'"*Jie Fang v.*

7  *Dir. U.S. Immigr. & Customs Enf't,* 935 F.3d 172, 180 (3d Cir. 2019) (quoting *Bennett v. Spear,*

8  520 U.S. 154, 177-78 (1997)). After analyzing both *Bennett* factors, the court in *Jie Fang*

9  determined, "The order terminating the students' F-1 visa status was therefore a final order for

10 jurisdictional purposes because there was no further opportunity for review." *Id*. at 185.

11 Plaintiff's SEVIS status, also known as F-1 visa status, was unlawfully terminated by the

12 Defendants in the case, similar to the terminations experienced in *Jie Fang*. Therefore, the

13 order terminating Plaintiff's SEVIS status was a final agency action ripe for review under the

14 APA.

15 As the Defendants' own regulations did not authorize termination of F-1 status or

16 SEVIS status for an unproven misdemeanor arrest, this Court correctly concluded that

17 Defendants' action was likely "not in accordance with law" as well as arbitrary and capricious.

18 TRO at 8-13.

19

20

21

22

C. Status versus Presence:
Clarifying "Unlawful Status" versus "Unlawful Presence"

An F-1 student is in "lawful status" until DHS validly terminates it under 8 C.F.R. § 214.1(d) or the Designated School Official[1] ("DSO") acts under 8 C.F.R. § 214.2(f). Once terminated, the student immediately is in "unlawful status" (becomes "out of status"), meaning the student loses all privileges of the F-1 status classification. However, under longstanding DHS memoranda and *Guilford Coll. v. McAleenan*, 389 F.Supp. 3d 377 (M.D.N.C. 2019), "unlawful presence" generally does not begin accruing until DHS or an immigration judge formally finds that the student has violated status.

"Unlawful status" arises when a nonimmigrant fails to maintain status, such as overstaying the expiration date on the I-94, having been convicted of a crime of violence imprisonment greater than one year. However, unlawful status alone does not immediately trigger the accrual of unlawful presence.



*Figure 1: Unlawful Presence*

"Unlawful Presence" is a subset of unlawful status that begins only when two conditions intersect: first, the nonimmigrant has already failed to maintain status, and second, the government (USCIS or an immigration judge) has provided notice, an opportunity to respond, and notice[2] of a final decision finding the status

---

1  Erin Garcia is a former PDSO who wrote and taught NAFSA's F-1 advising curriculum and provides a declaration supporting this motion. Garcia Decl. ¶¶ 5-7.
2  For nonimmigrant visa categories with an explicit expiration date, unlike students who are present for duration of status ("D/S"), the expiration date on Form I-94 is considered sufficient notice to start the accrual of unlawful presence upon the nonimmigrant's stay extending beyond the expiration date without seeking other relief.

Plaintiff's Motion for Preliminary Injunction – 5
No. 2:25-cv-00633-DGE

violation occurred. Such notice commonly occurs either when USCIS denies an application for immigration benefits due to unlawful status, or when an immigration judge formally determines that the nonimmigrant violated his status. In both cases, the nonimmigrant is provided with due process, including the opportunity to confront the allegations made by the government. Only after these two conditions overlap does unlawful presence begin to accrue.

When an F-1 student is physically present in the United States, the student's status remains lawful so long as they do not violate[3] the terms of their status. Once a status violation occurs, the student immediately begins to accrue "unlawful status" and, therefore, placing their student status and the benefits attached thereto at risk of termination, including OPT/CPT employment authorization, the ability to change schools, the ability to continue studying, and others. Even if the students' status violation is not immediately detected, the students' ability to change status, apply for permanent residence or citizenship may be impacted. The University of Washington's Assistant Director of International Student Advising confirms that these benefits cease the moment SEVIS shows a termination. Sweet Decl. ¶¶ 10-12, 33, 37-39. The loss of status is then memorialized in SEVIS by terminating the student's SEVIS record. Typically, it is a DSO that memorializes the failure to maintain status marking the student as terminated in SEVIS. Garcia explains that DSOs are trained to terminate a record only after confirming an actual status violation and, where possible, giving the student notice and an opportunity to cure. Garcia Decl. ¶¶ 8, 12-13. In all cases, once the student's SEVIS status is terminated, the student's ability to claim lawful status based on being an F-1 student present in the U.S. is

---

[3] Status can be terminated for a variety of automatic, administrative reasons, including completion of a degree program, leaving the U.S. for more than five months, change of status, adjustment of status, and other factors. However, all of these are terminations based on the normal maintenance and management of the SEVIS system and not due to allegations that the student has somehow failed to maintain status.

Plaintiff's Motion for Preliminary Injunction – 6
No. 2:25-cv-00633-DGE

1  extinguished. No viable reinstatement or data-fix option exists for terminations imposed by

2  Defendants under category "Other". Sweet Decl. ¶¶ 28-33. Garcia further notes that

3  reinstatement petitions are costly, protracted, and categorically unavailable to students on OPT,

4  often leaving them in regulatory limbo or forcing departure. Garcia Dcl. ¶¶ 17-19. However, in

5  some circumstances the student may request reinstatement. Should a student's reinstatement be

6  approved by USCIS, the student is returned to F-1 status *nunc pro tunc*, and any unlawful stay

7  accrued is eliminated.

8  When USCIS doubts a student's

9  claim for reinstatement, a request for

10  evidence or notice of intent to deny is

11  sent to the student. 8 C.F.R. § 103.2(b)

12  (8). The student can then provide

13  additional evidence and argument

14  supporting the application for

15  reinstatement. 8 C.F.R. § 103.2(b)(11). A

16  denial of the reinstatement application, or

17  any other petition or application, based

18  on the student being out of status, after an

19  opportunity to respond to the

20  government's arguments, results in the student

21  immediately beginning to accrue unlawful

22  presence.



*Figure 2: Student Process from Unlawful Status to Unlawful Presence*

Plaintiff's Motion for Preliminary Injunction – 7
No. 2:25-cv-00633-DGE

Similarly, if a student does not leave the U.S. and continues to stay out of status, the student becomes deportable unless reinstatement is granted by USCIS. 8 U.S.C. § 1227(a)(1)(C)(i) ("Nonimmigrant status violators"). As a result, under the applicable law, the student could be served with a notice to appear, given due process to pursue his claims, and if found by an immigration judge to be out of status the student would immediately start to accrue unlawful presence.

Federal regulations thus carefully distinguish between losing status immediately upon any violation and triggering unlawful presence once DHS or an immigration judge issues formal notice. *See Guilford Coll.*, 389 F. Supp. 3d at 384. Here, Defendants have, contrary to law, placed the cart before the horse by terminating the Plaintiff's SEVIS status before any determination that a failure to maintain status has occurred; as a result, Plaintiff is automatically considered to be accruing unlawful status, despite his criminal case remaining unproven and the absence of any other grounds for termination. *Id*.

D. <u>Temporary Restraining Order</u>

On April 17, 2025, this Court granted Plaintiff's request for a Temporary Restraining Order, enjoining Defendants from enforcing the SEVIS termination, requiring the record be returned to active status, and restraining Defendants from detaining or removing Plaintiff based upon the invalid termination. TRO at pp. 21-22. Specifically, the Court found:

- Plaintiff is likely to succeed on his APA claim because "the action was unauthorized by 8 C.F.R. § 214.1(d) and was arbitrary and capricious." *Id*. at 8-13.

- Plaintiff faces irreparable harm, including "the inability to complete his doctoral program, loss of research, loss of research grants, potential deportation, and unlawful presence[4] bars." *Id*. at 14-19.
- "The balance of equities and the public interest strongly favor preserving Plaintiff's active F-1 status." *Id*. at 18-20.

Plaintiff now seeks a preliminary injunction extending these protections until the final resolution of his underlying APA and constitutional claims.

## II. <u>Legal Standard</u>

A party seeking a preliminary injunction must show: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of hardships tips in the movant's favor, and (4) that an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Alternatively, the Ninth Circuit applies a "serious question" approach: if serious questions going to the merits exist and the balance of hardships tips sharply in the movant's favor, injunctive relief may issue if the remaining *Winter* factors are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011).

Courts in the Ninth Circuit regularly hold that returning the parties to the last uncontested status is prohibitory relief. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060-61 (9th Cir. 2014). "Status quo" refers to "the last uncontested status preceding the pending controversy." *Id*. Here, the "pending controversy" arose only when Defendants terminated

---

4  While Plaintiff's SEVIS status has been returned to active by the Defendants, without the TRO and extension of it into a preliminary injunction, subsequent termination would result in him accruing unlawful status again. Unlawful status carries with it many more immediate harms than unlawful presence, including the inability to change or adjust status, modify the student program, obtain CPT/OPT employment, continue studying, and risking being placed in removal proceedings at any time.

Plaintiff's Motion for Preliminary Injunction – 9
No. 2:25-cv-00633-DGE

Plaintiff's SEVIS record, so restoring his record simply preserves the pre-termination status quo.

III. <u>**Argument**</u>

    A.    <u>Plaintiff is Likely to Succeed on the Merits</u>[5]

Under the *Accardi* doctrine, agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267-68 (1954). Defendants' decision to terminate Plaintiff's SEVIS record due to an interaction with law enforcement that has not resulted in a conviction conflicts with the plain text of 8 C.F.R. § 214.1(d) and is not authorized under 8 U.S.C. § 1372; the termination of student status was not authorized by any statute or regulation. In *Guilford Coll. v. McAleenan*, the court similarly set aside a USCIS policy memorandum that improperly changed how unlawful presence accrued for F-1 students that was unsupported by statute or regulation. 389 F. Supp. 3D at 384. Here, likewise, a new or unwritten policy to terminate SEVIS records for unproven minor criminal allegations is arbitrary and capricious, and not in accordance with the law.

Furthermore, USCIS's own NOID – although directed to a different student – confirms that the government is uniformly applying the same extra-regulatory grounds to deny benefits, stating that the SEVIS termination means "the beneficiary failed to maintain . . . nonimmigrant status." Ex. C.

---

[5] The present motion relies on Plaintiff's APA causes of action as those claims are dispositive of the preliminary injunctive relief requested. Plaintiff's remaining causes of action may be resolved at a later date.

Plaintiff's Motion for Preliminary Injunction – 10
No. 2:25-cv-00633-DGE

B.  <u>Plaintiff Will Suffer Irreparable Harm Absent Continuing Injunctive Relief</u>

As this Court recognized, the harms Plaintiff faces are concrete, imminent, and irreparable: (1) loss of enrollment in his doctoral program; (2) potential loss of grants and professional connections; (3) risk of immediate removal or detention; and (4) unlawful presence accrual potentially triggering multi-year bars to re-entry. *See Ruiz-Diaz v. United States*, No. C07-1881-RSL, 2008 WL 3928016, at *2 (W.D. Wash. Aug. 21, 2008) (enjoining accrual of unlawful presence to prevent irreparable harm). The NOID sample illustrates the real-world, present-tense consequence: DHS is already refusing changes of status to others based solely on the April 2025 mass terminations. Doc. 25-1, Ex. C.

Once Plaintiff's SEVIS record was terminated, he was considered out of status and started to accrue unlawful status. As a result, there was an immediate cessation of all immigration benefits including the following: his ability to attend class and do research at the UW was immediately halted, he was not allowed to enroll in any other classes, he became unable to pursue any opportunity for practical training, he no longer had lawful F-1 student status. Termination also cancels curricular practical training, on-campus assistanships, and OPT/STEM-OPT authorizations, jeopardizing tuition funding and depriving U.S. employers of needed STEM talent. Garcia Decl. ¶¶ 14-16.

Independent interviews of two University of Washington principal investigators confirm that removing a doctoral researcher mid-project can render an entire federally funded study non-viable. Declaration of Deborah Niedermeyer[6] ("Niedermeyer Decl.") ¶¶ 4-9, 13-17, Doc.

---

6  Niedermeyer, a researcher and former 35-year WSBA attorney, interviewed two University of Washington principal investigators who declined to sign declarations for fear of governmental retaliation. Niedermeyer Decl. ¶¶ 10-12, 18-20. Niedermeyer has also documented and provided highlighted articles supporting the basis for the fear of governmental retaliation and evidence of the government's attack on foreign academics in the U.S..

Plaintiff's Motion for Preliminary Injunction – 11
No. 2:25-cv-00633-DGE

24. Loss of F-1 status would also derail Doe's dissertation entirely; he would be forced to restart a new project at another institution, adding three-to-four years to his Ph.D. timeline and postponing his entry-level post-doctoral or industry salary. Sakiyama-Elbert Decl. ¶¶ 4-5. The same disruption ripples outward: faculty report that if even one doctoral or post-doctoral research is forced out, the lab may have to abandon the study altogether, wasting the federal grant and years of accrued data. Niedermeyer Decl. ¶¶ 5-9, 13-7, 21-22. The harm to an advanced doctoral student's education and career cannot be remedied by monetary relief. Sweet Decl. ¶¶ 10-11, 35-38; Sakiyama-Elbert Decl. ¶¶ 4-6; *Tully v. Orr,* 608 F. Supp. 1222, 1225-26 (E.D.N.Y. 1985) (disenrolling a cadet from the United States Air Force Academy "just prior to his examinations and graduation" would be an irreparable harm where the candidate would face the prospect of having to repeat courses, delay his graduation, and have a deletirious effect on his future). Nor can the lost taxpayer investment in the abandoned project be recouped. Niedermeyer Decl. ¶ 9.

In the normal management of SEVIS, a student is marked terminated only when he has failed to maintain status. Here, Defendants terminated Plaintiff's status without any examination of the facts underlying Plaintiff's law enforcement encounter. Sweet Decl. ¶¶ 25-27, 40-42.

      C.      <u>Balance of Equities Tips Sharply in Plaintiff's Favor</u>

As this Court has already found, maintaining the pre-termination status quo imposes no significant burden on Defendants, who can still investigate or take lawful actions if valid grounds for termination arise. *See Ruiz-Diaz,* No. C07-1881-RSL, at *2. Meanwhile, Plaintiff

---

*Id.* at ¶ 22.

Plaintiff's Motion for Preliminary Injunction – 12
No. 2:25-cv-00633-DGE

faces life-altering consequences if he is stripped of his student status pending final resolution. Similarly, the public interest is harmed, because the University of Washington likewise suffers program-wide harm from the loss of graduate assistants and interruption of federally funded research. Sweet Dec. ¶¶ 35-38. Garcia details how sudden terminations sever employer relationships, undermine sponsored research, and strain university-industry pipelines nationwide. Garcia Decl. ¶¶ 14-16. Niedermeyer further documents faculty fears that publicly opposing these terminations will trigger retaliatory funding cuts, compounding the threat to U.S. research leadership. Niedermeyer Decl. ¶¶ 18-22. These sworn accounts underscore the systemic, nationwide stakes that extend well beyond Doe's individual plight.

Doe's forced departure would leave his mentor's laboratory without a trained senior researcher, delaying critical biomedical experiments while a replacement is recruited and trained. Sakiyama-Elbert Decl. ¶ 6. Here, the public interest also strongly favors the Plaintiff because the public interest is served by ensuring the government adheres to lawful procedures and regulations. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This cascading delay to grant funded health-research projects underscores the public's stake in preventing the unlawful termination. Sakiyama-Elbert Decl. ¶ 6.

D.    The Requested Relief is Prohibitory, Not Mandatory

The last relevant uncontested state of affairs was Plaintiff's active SEVIS, immediately prior to Defendants' unlawful termination of his status. The Ninth Circuit consistently recognizes that the relevant status quo is the last uncontested state of affairs. *Ariz. Dream Act Coalition*, 757 F.3d at 1060-61. Plaintiff's record was active on April 6, 2025, and only changed to terminated on April 7; this was without a lawful reason. Restoring Plaintiff's SEVIS status to

Plaintiff's Motion for Preliminary Injunction – 13
No. 2:25-cv-00633-DGE

active and keeping it active simply preserves the pre-controversy state of affairs. Thus, the relief sought remains prohibitory in nature.

### IV.     Conclusion

For the foregoing reasons, Plaintiff respectfully requests that the Court convert its April 17, 2025, TRO (Doc. 16) into a Preliminary Injunction, ordering Defendants to preserve and maintain his F-1 SEVIS record in active status and enjoining any detention or removal arising from the April 7, 2025 termination.

Finally, Defendants face no cognizable pecuniary harm from an injunction that merely maintains the pre-termination status quo. As a result, Plaintiff respectfully requests that the Court exercise its discretion to waive any bond requirement or, in the alternative, set a nominal bond not exceeding $100. Fed. R. Civ. P. 65(c); *see Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (determining nominal bond to not be an abuse of discretion); *Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) (finding proper the district court's exercise of discretion in allowing an environmental group to proceed without posting bond).

Respectfully submitted this 23rd Day of April 2025,

Plaintiff's Motion for Preliminary Injunction – 14
No. 2:25-cv-00633-DGE

| | |
|---|---|
| GAIRSON LAW, LLC | OPEN SKY LAW, PLLC |
| /s/ Jay Gairson | /s/ Devin T. Theriot-Orr |
| Jay Gairson, WSBA 43365 | Devin T. Theriot-Orr, WSBA 33995 |
| 4606 Martin Luther King Jr. Way S.<br>Seattle, WA 98108<br>Tel.   (206) 357-4218<br>Em.   jay@gairson.com | 20415 72nd Ave S., Ste 110<br>Kent, WA 98032<br>Tel.   (206) 962-5052<br>Fax   (206) 681-9663<br>Em.   devin@opensky.law<br>         whitney@opensky.law |

Counsel for Plaintiff John Doe

Plaintiff's Motion for Preliminary Injunction – 15
No. 2:25-cv-00633-DGE

**Certificate of Service**

I certify that on April 23, 2025, I electronically filed the foregoing document, together with all attachments, with the Clerk of the Court for the Western District of Washington using the CM/ECF system.

/s/ Jay Gairson
_____
Jay Gairson, WSBA 43365