# SUPPLEMENTAL APPENDIX

**(A) Order [Granting Preliminary Injunction],** *Liu v. Noem*, **No. 1:25-cv-00133-SE-TSM, 2025 DNH 057 (D.N.H. Apr. 29, 2025), ECF No. 24;**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Xiaotian Liu

   v.          Case No. 25-cv-133-SE
                  Opinion No. 2025 DNH 057

Kristi Noem et al.


**O R D E R**

On April 7, 2025, Plaintiff Xiaotian Liu brought suit against Kristi Noem, the Secretary of the Department of Homeland Security (DHS), and Todd Lyons, the Acting Director of Immigration and Customs Enforcement (ICE), alleging that DHS unlawfully terminated his F-1 student status in the Student and Exchange Visitor (SEVIS) system. He alleges, among other things, that DHS violated his due process rights under the Fifth Amendment and violated the Administrative Procedure Act when it terminated his status in the system. Before the court at this juncture is Liu's motion for a preliminary injunction "(i) enjoining Defendants from terminating Plaintiff's F-1 student status under the Student and Exchange Visitor (SEVIS) system and (ii) requiring Defendants to set aside their termination determination." Doc. no. 10 at 1.

With his complaint, Liu filed a motion for a temporary restraining order, requesting a TRO providing the same relief he now requests in the form of a preliminary injunction. The court held two hearings on Liu's motion, during which counsel for Liu and the defendants appeared. Although the defendants were given notice and an opportunity to be heard, the defendants' counsel acknowledged at the latter hearing that he had not had adequate time to investigate certain of Liu's factual allegations or evaluate properly the legal bases on which Liu's motion rested. Therefore, the court construed Liu's motion as a request for the provisional

remedy of a TRO with notice, which essentially sought to avoid irreparable harm until the defendants were able to review the factual record and develop their legal arguments sufficiently to address the request for preliminary relief.

The court granted Liu's motion, enjoining the defendants from terminating Liu's F-1 student status under the SEVIS system and requiring them to set aside their termination determination. Liu immediately filed the present motion for a preliminary injunction and the court ordered the parties to meet and confer regarding an appropriate briefing and argument schedule for the preliminary injunction hearing. The parties agreed on a schedule and submitted additional filings related to the motion. The court held a hearing on Liu's motion on April 22, 2025. At the conclusion of the hearing, the court extended the TRO until April 25, 2025, to allow it time to consider fully the arguments offered.

On April 25, 2025, counsel for the defendants confirmed that ICE had announced a new policy generally applicable to F-1 nonimmigrant students and their SEVIS records. He could not, however, confirm that the new policy would apply to Liu or that Liu's student status and SEVIS record would be active under the new policy. The court further extended the TRO until April 29, 2025, to give the parties an opportunity to determine whether the ICE policy affected this case.

On April 29, 2025, Liu filed an addendum to his preliminary injunction motion in which he asserts that resolution of his motion remains necessary. Doc. no. 23. He offers three reasons. First, the defendants have not confirmed that ICE's new policy regarding F-1 nonimmigrant students and their SEVIS records applies to Liu. Second, even if they did, Liu still faces irreparable harm absent injunctive relief because the defendants have argued in this case that a student's SEVIS record does not have any bearing on his actual F-1 student status. And third, the

2

voluntary cessation doctrine shows that he still faces irreparable harm regardless of ICE's new policy.

The defendants have indicated an intention to respond to Liu's addendum but have not yet responded as of the time of this order. The court would be remiss if it failed to acknowledge the uncertainty surrounding the record before the court as it pertains to Liu's preliminary injunction motion. As discussed further below, since Liu filed this action: (1) DHS has changed its proffered reason for terminating Liu's F-1 student status in the SEVIS system, (2) the defendants have argued that the web-based system which has the purpose of accurately reflecting an international student's F-1 status is, in effect, meaningless because it is wholly divorced from a student's actual F-1 status, and (3) ICE has announced a new policy generally applicable to F-1 nonimmigrant students and their SEVIS records, which the defendants have not yet been able to confirm applies to Liu. This constantly shifting ground has made it difficult to weigh the defendants' arguments in opposing preliminary relief. The court would prefer to grant the defendants additional time to respond in the hope that this decision could rest on a more definitive record or that the parties could come to a temporary resolution on Liu's request for preliminary relief. Nevertheless, the court is loath to extend the TRO again, a remedy designed to provide relief for an extremely short duration. The court therefore analyzes Liu's motion for a preliminary injunction based on the current record and may very well need to reconsider its analysis or the relief granted herein in light of new information or argument. If appropriate, the defendants are free to file for reconsideration.

<u>Background</u>

I.  <u>F-1 and SEVIS</u>[1]

The Immigration and Nationality Act, 8 U.S.C. § 1101(a)(15)(F), permits noncitizens to enroll in government-approved academic institutions as F-1 nonimmigrant students. <u>See</u> 8 C.F.R. § 214.1(a)(2). Only academic institutions that have obtained formal approval from DHS can sponsor F-1 students. <u>See</u> id. § 214.3. The Designated School Official (DSO) at each school sponsoring F-1 students monitors, advises, and oversees the students attending that school, including updating and maintaining certain records. In order to enter the country, an admitted international student must secure an F-1 nonimmigrant visa from the United States Department of State, though the visa does not govern how long an F-1 student may stay in the United States.

When the student enters the United States, the student is granted F-1 student <u>status</u> and is permitted to remain in the United States for the duration of status as long as the student continues to meet the requirements established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f). "Duration of status" is defined, in general, as "the time during which an F-1 student is pursuing a full course of study at an educational institution certified [ ] for attendance by foreign students, or engaging in authorized practical training following completion of studies[.]" Id. § 214.2(f)(5)(i).

ICE, a subagency of DHS, is responsible for the Student and Exchange Visitor Program (SEVP), which keeps records on F-1 students. <u>See</u> 8 U.S.C. §§ 1372(a), (c) (requiring program to

---

[1] The following tracks, with some alterations, both the content and language of the thorough overview provided in Madan B K v. Noem, Case No. 1:25-cv-419, 2025 WL 1171572, at *5 (W.D. Mich. Apr. 23, 2025).

collect information). SEVP manages the SEVIS system, "the web-based system that [DHS] uses to maintain information regarding: . . . F-1 . . . students studying in the United States[.]"[2]

F-1 students fail to maintain their status when they do not meet certain regulatory requirements, such as failing to maintain a full course of study without prior approval or other violations of the requirements set forth in the Code of Federal Regulations at 8 C.F.R. § 214.2(f). DSOs at the students' schools are required to report to SEVP, via SEVIS, when a student fails to maintain status. 8 C.F.R. § 214.3(g)(2).

F-1 students are also subject to the requirements for "maintenance of status" set forth in 8 C.F.R. § 214.1 that apply to several nonimmigrant classes, including F-1 students. These requirements include "obedience to all laws of United States jurisdictions which prohibit the commission of crimes of violence and for which a sentence of more than one year imprisonment may be imposed." Id. § 214.1(g). Section 214.1(g) adds that a "nonimmigrant's conviction in a jurisdiction in the United States for a crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed) constitutes a failure to maintain status[.]" Id.

Further, an agency may terminate a student's F-1 status for the reasons stated in § 214.1(d). That section provides that "[w]ithin the period of initial admission or extension of stay, the nonimmigrant status of an alien shall be terminated [1] by the revocation of a waiver authorized on his or her behalf under section 212(d)(3) or (4) of the Act; [2] by the introduction of a private bill to confer permanent resident status on such alien; or, [3] pursuant to notification

---

[2] About SEVIS, Department of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 29, 2025).

in the Federal Register, on the basis of national security, diplomatic, or public safety reasons."

Id. § 214.1(d).

An F-1 student who fails to maintain status must leave immediately or seek reinstatement and is not given a grace period to prepare for departure. See id. § 214.2(f)(5)(iv) ("An F-1 student who has completed a course of study and any authorized practical training following completion of studies will be allowed an additional 60-day period to prepare for departure from the United States or to transfer in accordance with paragraph (f)(8) of this section . . . . However, an F-1 student who fails to maintain a full course of study without the approval of the DSO or otherwise fails to maintain status is not eligible for an additional period for departure.").

While a student may seek reinstatement of his status in SEVIS, a student is not required to do so. Under the reinstatement guidelines, United States Citizenship and Immigration Services (USCIS) may consider reinstating, but is not required to reinstate, a student who demonstrates among other things that he "has not been out of [valid F-1] status for more than 5 months at the time of filing the request for reinstatement" or that "the failure to file within the 5 month period was the result of exceptional circumstances and that the student filed the request for reinstatement as promptly as possible under these exceptional circumstances." Id. § 214.2(f)(16)(i)(A). If USCIS does not reinstate the student's status, the student may not appeal that decision. Id. § 214.2(f)(16)(ii).

II.  Liu's F-1 Status

Liu is a 26-year-old student at Dartmouth College who has been pursuing a Ph.D. in computer science since September 2023. Liu is a citizen and national of the People's Republic of China. He first came to the United States in August 2016 as an F-1 student to pursue

6

an undergraduate program at Wake Forest University. He graduated with a Bachelor of Science in Mathematics and Computer Science in May 2020. That September, he continued his studies at Wake Forest to pursue a Masters in computer science.

In May 2021, Liu returned to China to renew his F-1 visa, but the application went into administrative processing. Due to the extended visa application process and the ongoing COVID-19 pandemic, he decided to take a gap semester with the approval of Wake Forest. In late September 2021, after successfully receiving his renewed F-1 visa, Liu informed several Wake Forest administrators, including his academic advisor, the Computer Science department chair, and the Computer Science department administrator, that he intended to return to the United States for the Spring 2022 semester.

Although Liu submitted a detailed graduation plan, he was unaware that he also needed to contact Wake Forest's DSO, who was in charge of updating his F-1 status, to request the reinstatement of F-1 student status in the SEVIS system. Therefore, his SEVIS status remained inactive in the system. On January 2, 2022, Liu arrived at the Detroit Metropolitan Wayne County Airport. U.S. Customs and Border Patrol (CBP) officers took him for secondary inspection. During that inspection, Liu was able to connect a CBP officer with Liu's department chair at Wake Forest. The officer confirmed Liu's student status but was unable to approve his entry without an active SEVIS record. The Wake Forest DSO proposed granting temporary entry while reactivation paperwork was processed, but CBP declined the request. Liu spent the night at the CBP facility and returned to China the next day.

Due to China's 28-day mandatory quarantine, Liu applied for another gap semester and began researching computer science with other researchers in China. Liu returned to Wake

Forest on July 23, 2022, to resume his studies. He graduated with a Master of Science in Computer Science in May 2023.

In September 2023, Liu began his Ph.D. program in Computer Science at Dartmouth College. He returned to China in June 2024 for a routine F-1 visa renewal and came back to the United States in August 2024 to continue his doctoral studies without any issues. Most recently, in December 2024, Liu traveled to Vancouver, Canada, to attend an academic conference and returned without any issues.

On April 4, 2025, Dartmouth informed Liu via email that his F-1 student status in the SEVIS system was terminated. According to the email, Dartmouth "discovered this evening that your F-1 record in SEVIS has been terminated by the Department of Homeland Security." Doc. no. 10-5 at 2. Dartmouth explained that the notation in Liu's SEVIS record read: "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-5 at 2.

On April 8, 2025, after Liu filed this lawsuit, Dartmouth notified Liu that his SEVIS termination record had changed to: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-15 at 2. Liu submitted evidence that he has not committed any crime, and the defendants do not contend otherwise. Further, the defendants represent that Liu's visa has not been revoked.

For obvious reasons, most notably as the defendants admitted at the hearing that SEVIS's purpose is to reflect accurately information regarding SEVP schools and F-1 students, both Liu and Dartmouth have interpreted DHS's termination of Liu's F-1 status in SEVIS to mean that

DHS terminated his actual F-1 status.[3] That termination is having significant consequences for Liu and will continue to do so in the near future. Specifically, without F-1 student status Liu is no longer authorized to work as a research assistant or receive his stipend from his Ph.D. program. Anything more than a minor delay in Liu's progression with his research will affect his ability to complete his studies and obtain a Ph.D. In addition, Liu fears he may be at risk of immigration detention and deportation, and he may be accruing time out of F-1 student status, which may make it more difficult or impossible to reinstate his status in the future.

Standard of Review

"'A preliminary injunction is an extraordinary remedy never awarded as of right.'" Capen v. Campbell, --- F.4th ---, 2025 WL 1135269, at *4 (1st Cir. Apr. 17, 2025) (quoting Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008)). "In determining whether to grant a preliminary injunction, the district court must consider: (i) the movant's likelihood of success on the merits of its claims; (ii) whether and to what extent the movant will suffer irreparable harm if the injunction is withheld; (iii) the balance of hardships as between the parties; and (iv) the effect, if any, that an injunction (or the withholding of one) may have on the public interest." Id. (quotations omitted). "The first of these factors is a necessary condition: If the movant fails to demonstrate a likelihood of success on the merits, the remaining elements are of little consequence." Id. (quotations omitted). "[A] court's conclusions as to the merits of the issues presented on preliminary injunction are to be understood as statements of probable outcomes."

---

[3] As discussed further below, the defendants dispute the implications of DHS's termination of Liu's F-1 status in SEVIS. That dispute is at the heart of the defendants' objection to Liu's preliminary injunction motion.

Id. (quotations omitted). When, as here, the defendants are government officials sued in their

official capacities, the balance of the hardships and the public interest factors merge. Does 1-6 v.

Mills, 16 F.4th 20, 37 (1st Cir. 2021).


Discussion

Liu requests a preliminary injunction "(i) enjoining Defendants from terminating

Plaintiff's F-1 student status under the Student and Exchange Visitor (SEVIS) system, and (ii)

requiring Defendants to set aside their termination determination." Doc. no. 10 at 1. The

defendants object, arguing that Liu cannot show that any of the four preliminary injunction

factors weighs in his favor.


I.      F-1 Student Status v. F-1 Student Record in SEVIS

At bottom, the defendants' arguments on each factor under consideration turn on the

answer to a seemingly straightforward question: What does Liu challenge in this case? On the

face of Liu's pleadings, the answer seems obvious; Liu challenges DHS's termination of his F-1

student status. He learned of that termination when Dartmouth saw that DHS had terminated his

F-1 student status in SEVIS, the database that exists to track and document the continuing status

of noncitizen students who are authorized to study in the United States.

The defendants say otherwise. They argue repeatedly that DHS has not changed Liu's F-1

student status. Importantly, as discussed below, they refuse to present competent evidence to

support that argument or stipulate to that fact on the record. Instead, they merely argue that DHS

only terminated the record of Liu's F-1 student status in the SEVIS database, an action that they

assert is divorced entirely from Liu's actual F-1 student status. To the defendants, this is an act of

10

simple record-keeping, one which they argue Liu cannot challenge in this court for many reasons.

The implications of the defendants' arguments are troubling. They conceded at the hearing, as they must, that SEVIS's purpose is to reflect accurately an international student's status. Yet they contend that they purposefully terminated Liu's F-1 status in SEVIS despite purportedly not terminating his actual F-1 status, with the result that the former no longer reflects the latter. The only justification they offered for such an action was that DHS has broad authority to manage its web-based systems as it sees fit.

The potential repercussions of the defendants' position are notable but ultimately irrelevant in this case. Instead, the relevant point is that defendants' argument suffers from a fundamental and fatal flaw: all of the evidence in the record at this stage of the litigation supports Liu's allegation that DHS terminated his actual F-1 student status when it terminated his record in SEVIS.

To begin, although the defendants stated several times during the hearing that DHS did not terminate Liu's actual F-1 student status, they repeatedly declined the opportunity to offer any evidence to support that assertion. They did not accept Liu's offer to confirm in a declaration that he retained his F-1 student status. They refused the court's suggestion that they stipulate that Liu's F-1 student status remained active. Instead, they pointed only to the declaration of Andre Watson, the Senior Official within the National Security Division for Homeland Security Investigations. Doc. no. 15-1. Watson's declaration, included as an exhibit to the defendants' objection to Liu's motion, states: "Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP

11

has never claimed that it had terminated [Liu's] nonimmigrant status." Id., ¶ 11 (emphasis

added). This language is not evidence that Liu's F-1 student status remains active, and the

defendants' refusal to stipulate that it remains active only underscores the equivocal language of

Watson's statement.

For his part, Liu presents several pieces of evidence to support his allegation that his

SEVIS record accurately reflected DHS's termination of his F-1 student status. On April 4, 2025,

DHS terminated Liu's F-1 record in SEVIS and added the following notation: "OTHERWISE

FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has

had their VISA revoked. SEVIS record has been terminated." Doc. no. 10-5 at 2. As discussed

above, there are various ways that an F-1 student may fail to maintain his F-1 status. DHS states

on its website that a designation in SEVIS of "OTHERWISE FAILING TO MAINTAIN

STATUS" means that "[t]he student has not maintained status."[4] Thus, on April 4, 2025, DHS's

notation in Liu's SEVIS record showed that DHS had terminated Liu's record because he had

not maintained his F-1 student status.

It is worth noting that the defendants attempted to distance themselves from the April 4,

2025 SEVIS entry by highlighting that DHS subsequently changed the entry. Specifically, on

April 8, 2025, after Liu instituted this action, DHS changed the notation to read: "OTHER –

Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record

has been terminated." Doc. no. 10-15 at 2. To the extent that the defendants believe that this

---

[4] SEVIS SELF HELP HUB, Department of Homeland Security,
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-
terminations/termination-reasons (last checked Apr. 29, 2025).

belated change somehow demonstrates that DHS terminated only Liu's record in SEVIS and not his actual F-1 student status, that argument is unpersuasive.

 The State Department's own guidance document further supports the conclusion that a student's SEVIS record is a manifestation of a student's F-1 status. The Foreign Affairs Manual, an "authoritative source" for State Department polices that "convey[s] codified information to Department staff and contractors,"[5] explains that "the SEVIS record is the definitive record of student or exchange visitor status and visa eligibility." 9 F.A.M. 402.5-4(B).

 Indeed, the evidence before the court at this stage demonstrates that DHS officials and agencies follow this directive and construe a student's SEVIS record as the equivalent of his actual F-1 student status. For example, Liu submitted a letter from USCIS regarding a petition for a student to be classified as a temporary worker. The letter notes that "[a]ccording to the [student's] SEVIS record . . . their F-1 nonimmigrant status was terminated on April 10, 2025 because of the criminal records check and the revocation of their F-1 visa." Doc. no. 18-1 at 3. Though the specific facts surrounding that student's immigrations status were distinguishable from Liu's, USCIS construed the termination of the student's F-1 status in the SEVIS system as the termination of his actual F-1 student status. Specifically, USCIS stated that in light of the student's SEVIS record, "[i]t appears that the [student] is not in valid F-1 nonimmigrant status" and concluded that the student has "failed to maintain [his] nonimmigrant status." Id.

 Liu's January 2, 2022 encounter with CBP officials at the airport in Detroit is further evidence that DHS agencies equate the termination of his F-1 status in the SEVIS system with the termination of his actual F-1 status. Despite confirmation from Liu's department chair at

---

[5] Foreign Affairs Manual, U.S. Department of State, https://fam.state.gov (last accessed Apr. 29, 2025).

Wake Forest that his student status was active, CBP officials would not allow Liu to enter the country because he did not have an active F-1 status in the SEVIS database. Liu was able to return to the United States to continue his studies only after the DSO at Wake Forest successfully updated his F-1 status in the SEVIS database.

The evidence in the record at this stage of the litigation leads to only one conclusion. DHS terminated Liu's F-1 student status when it terminated his record in SEVIS. The fact that Liu learned of and began suffering consequences of the termination because the action was reflected in the SEVIS database does not transform his claims into a record-keeping challenge. Liu's claims are clear — he challenges DHS's termination of his F-1 student status as it is manifested in the SEVIS database.

II.    Likelihood of Success on the Merits

Liu argues that he can show a likelihood of success on his claims that the defendants violated his Fifth Amendment Due Process Rights (Count 1) and his rights under the APA (Count 2) when DHS terminated his F-1 student status in the SEVIS system. Because the parties devote the bulk of their briefing to Liu's likelihood of success on his APA claim in Count 2, the court begins by discussing that claim.

"The APA 'sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts.'" Dep't of Homeland Sec. v. Regents of the Univ. of Cal., 591 U.S. 1, 16 (2020) (quoting Franklin v. Massachusetts, 505 U.S. 788, 796 (1992)). "It requires agencies to engage in 'reasoned decisionmaking,' Michigan v. EPA, 576 U.S. 743, 750 (2015), and directs that agency actions be 'set aside' if they are 'arbitrary, capricious,'" an abuse of discretion, or otherwise not in accordance with law. Id. (quoting 5

14

U.S.C. § 706(2)(A)) (cleaned up). In making that determination, the court must "assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment[.]'" Id. (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).

Liu argues that he is likely to succeed on his APA claim because "DHS's ability 'to terminate an F-1 student status is limited by 8 C.F.R. § 214.1(d).'" Doc. no. 10-1 at 8 (quoting Jie Fang v. Dir. U.S. Immigr. & Customs Enf't, 935 F.3d 172, 185 n. 100 (3d Cir. 2019) (brackets omitted)). As discussed above, § 214.1(d) provides three specific circumstances under which DHS can terminate a nonimmigrant's F-1 student status. Liu argues that it is undisputed that none of the conditions that would have allowed DHS to terminate his F-1 student status under § 214.1(d) occurred. Therefore, according to Liu, DHS has not complied with the regulation and its actions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

The defendants argue that Liu has failed to show a likelihood of success on the merits of his APA claim for several reasons. They contend first that there is no case or controversy here. Second, that the APA's waiver of sovereign immunity does not extend to Liu's claim because the Privacy Act of 1974, 5 U.S.C. § 552a, exclusively governs any claim related to information in SEVIS. Third, that even if the Privacy Act does not preclude APA review of Liu's claim, the act Liu complains of is not a final agency action. And finally, that DHS's termination of Liu's SEVIS status was not arbitrary or capricious.

A.    Case or Controversy

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III § 2. The defendants argue that there is no case or controversy here because Liu's status in the SEVIS system is distinct from his actual F-1 student status. The defendants contend that because Liu's claims do not relate to his actual F-1 student status, and because there is no evidence to support the allegation that his F-1 student status has changed, there is not a justiciable case or controversy.

The court rejects the defendants' argument in light of its conclusion above. The evidence at this stage of the litigation supports the conclusion that DHS terminated Liu's F-1 student status. Therefore, the defendants' argument that there is no case or controversy is misplaced.

B.    Privacy Act

The APA waives sovereign immunity for actions in federal district court by "person[s] suffering legal wrong because of agency action." 5 U.S.C. § 702. But the "waiver does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209, 215 (2012) (quoting § 702).

The defendants argue that Liu is not likely to succeed on the merits of his APA claim because the APA's waiver of sovereign immunity does not extend to his claim. They contend that instead, the Privacy Act exclusively governs his claim seeking to "amend the status field contained in his SEVIS record" and "forecloses relief," doc. no. 15 at 20, because it limits remedies to any individual who is "a citizen of the United States or an alien lawfully admitted for permanent residence," id. at 15.

16

The court need not address the defendants' arguments in depth because, as discussed above, they are based on a flawed premise. Liu is not seeking to correct a factual error in his SEVIS record such that his claim could potentially implicate the Privacy Act. See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz, 601 U.S. 42, 63 (2024) (noting that the Privacy Act was "passed to protect the privacy of individuals identified in federal information systems" and "addresses the government's retention and disclosure of personal information" while allowing individuals to seek a court order requiring it to change "inaccurate information" and "correct its records"). To the contrary, Liu's APA claim is based on the allegation that his SEVIS record accurately reflects that DHS unlawfully terminated his F-1 student status. In other words, it is DHS's termination of his F-1 student status, as that action is manifested in the SEVIS database, that Liu challenges here.

The Privacy Act is thus irrelevant to Liu's claim because it is not "a vehicle for amending the judgments of federal officials as those judgments are reflected in records maintained by federal agencies." Barnett v. United States, 195 F. Supp. 3d 4, 7 (D.D.C. 2016) (quoting Kleinman v. Dep't of Energy, 956 F.2d 335, 337–38 (D.C. Cir. 1992)) (ellipses omitted); Almahdi v. Lyons, No. CIV.A. 05-0218 RMC, 2006 WL 751331, at *3 (D.D.C. Mar. 21, 2006) ("Fundamentally, the Privacy Act is not the way to challenge the ultimate agency determination."). Therefore, Liu's claim, which challenges DHS's substantive determination, is outside of the Privacy Act's reach.

Even if the court were willing to accept the incongruity between the SEVIS record and Liu's F-1 student status pressed by the defendants, the Privacy Act would not bar Liu's APA claim because his SEVIS record is not a "record" under the Privacy Act for the same reason that the defendants argue that the Privacy Act would foreclose relief—Liu is not an "individual"

under the Act. See § 552a(a)(2) (defining "individual" as "a citizen of the United States or an alien lawfully admitted for permanent residence"). Because he is not an "individual," his SEVIS record is not a "record" under the Privacy Act. See § 552a(a)(4) (defining "record" as "an item, collection, or grouping of information about an individual that is maintained by an agency") (emphasis added).

The court notes for the sake of completeness that even if Liu's claim could come under the Privacy Act, he would not be precluded from pursuing his APA claim. "Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA." All. for Retired Ams. v. Bessent, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025); see Madan B K, 2025 WL 1171572, at *5. Thus, the Privacy Act does not displace relief under the APA.

### C.      Final Agency Action

Courts may not review agency actions under the APA unless they represent a "final agency action for which there is no other adequate remedy in a court." Harper v. Werfel, 118 F.4th 100, 116 (1st Cir. 2024) (quoting 5 U.S.C. § 704). An agency action is final when it satisfies two conditions: (1) the action "must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Id. (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997) (further quotations omitted)).

Again basing their argument on a misunderstanding of Liu's claim, the defendants argue that DHS's change to Liu's SEVIS record is not a final agency action. They contend that the

change does not mark the consummation of any decision-making process because it is, in effect, a meaningless action. And they argue that legal consequences do not flow from the mere termination of a SEVIS record because it does not have any bearing on a student's nonimmigrant status.

As with their other positions, the defendants' arguments are misplaced. Liu challenges DHS's termination of his F-1 student status, not his SEVIS record. Further, the evidence already discussed establishes that significant consequences flow from the termination of Liu's SEVIS record and F-1 student status. Even if Liu seeks reinstatement of his status, which is not mandatory, USCIS is not required to grant reinstatement and Liu is not entitled to appeal that decision. Liu challenges a final agency action under the APA. See Jie Fang, 935 F.3d at 179–85; Madan B K, 2025 WL 1171572, at *6 (collecting cases).

### D.   Violation of the APA

Because the defendants construe Liu's claim as one challenging his SEVIS records, they do not address directly whether DHS's act of changing Liu's F-1 student status was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. § 706(2)(A). But they submit, however briefly, that Liu could not meet that standard. They note that § 214.1(d) "provides three mandatory scenarios in which nonimmigrant status 'shall' be terminated without review. It does not, however, suggest that nonimmigrant status cannot be terminated for other reasons." Doc. no. 15 at 26 (citations omitted). In other words, because § 214.1(d) does not explicitly limit DHS's ability to terminate a nonimmigrant student's F-1 status to only the three reasons listed in that regulation, DHS did not violate the APA by failing to comply with that regulation.

Assuming that the defendants' interpretation of § 214.1(d) is correct—and there is authority holding that it is not, see Jie Fang, 935 F.3d at 176—that interpretation does not undermine Liu's APA claim. "An agency's decision is arbitrary and capricious if the agency relied on improper factors . . . or when a reasonable explanation for the agency's decision cannot be discerned." Gulluni v. Levy, 85 F.3d 76, 82 (1st Cir. 2023); see Motor Vehicle Ass'n v. State Farm Mut. Auto. Ins., 463 U.S. 29, 43 (1983) (agency action is considered arbitrary and capricious if the agency "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise").

Section 214.1(d) allows DHS to terminate a student's F-1 status for three reasons. Students can also fail to maintain their F-1 status if they do not comply with certain regulatory requirements, such as failing to maintain a full course of study or other violations of their requirements under § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances in which certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment or being convicted of a crime of violence subject a potential sentence of more than a year, "constitute a failure to maintain status." When, as here, DHS terminates a student status and denotes in SEVIS that the reason is "OTHERWISE FAILING TO MAINTAIN STATUS," it must "clearly explain how the student failed to maintain status."[6]

The defendants do not argue that DHS terminated Liu's status under § 214.1(d) or that Liu failed to maintain his status under any applicable regulation. Their briefing fails to identify

---

[6] SEVIS SELF HELP HUB, Department of Homeland Security, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/termination-reasons (last checked Apr. 29, 2025).

any regulation to support DHS's ability to terminate Liu's F-1 student status. The closest the defendants come to an explanation is the statement in Watson's declaration that DHS terminated Liu's F-1 student status because he sought admission into the United States on January 2, 2022, but was denied entry. Doc. no. 15-1, ¶¶ 7-8. Unsurprisingly, the defendants do not attempt to suggest that this encounter is a lawful justification for terminating Liu's F-1 student status. And they admit that they changed the reason for termination in the SEVIS database after this litigation began.

At oral argument, the court inquired whether the defendants intended to argue that any law or regulation authorized them to terminate Liu's status. They offered only the general authority Congress conferred under 8 U.S.C. § 1372 to develop and conduct a program to collect information regarding nonimmigrant students seeking F-1 student status and approved institutions. They offered no argument connecting the authority to collect information to the decision to terminate Liu's status.

To survive judicial review under the APA, an agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43 (quotation omitted). Based on the record before the court at this stage of the litigation, the defendants are unable to meet that standard.

For these reasons, Liu has shown a likelihood of success on the merits of his claim under the APA in Count 2.[7]

---

[7] Because the court finds that Liu has shown a likelihood of success on the merits of his APA claim in Count 2, it does not address at this time his claim in Count 1 that DHS violated his due process rights under the Fifth Amendment when it terminated his F-1 status in the SEVIS system.

III.     Irreparable Harm

Liu claims that he will suffer irreparable harm absent a preliminary injunction in several ways. First, because DHS terminated his F-1 status, he is no longer authorized to work as a research assistant or eligible to receive any stipend from his Ph.D. program. These are his only sources of income, and he is neither seeking nor able to recover money damages in this suit. Second, his inability to continue his research will delay his academic timeline and may threaten his ability to receive any departmental funding. Third, every day that he does not have F-1 student status makes it less likely that he would be able to reinstate his status in the future. Fourth, Liu may face possible detention and deportation because of his status.

Turning first to Liu's inability to recover money damages in this case, there is no dispute that he is neither seeking nor able to recover monetary damages in this case. The APA does not waive the government's sovereign immunity with regard to a claim seeking money damages. § 702. And monetary damages are unavailable for Fifth Amendment violations brought against federal officials in their official capacity. See Rosario v. Boyer, 23-cv-258-JL-AJ, 2024 WL 5202622, at *4 n.5 (D.N.H. Nov. 21, 2024) (citing Egbert v. Boule, 596 U.S. 482, 498-99 (2022)), report and recommendation approved 2024 WL 5200634 (D.N.H. Dec. 23, 2024)). Economic losses such as Liu's loss of stipend can be considered irreparable harm because he has no adequate remedy at law to recover for his damages. See, e.g., N.H. Hosp. Ass'n v. Burwell, No. 15-CV-460-LM, 2016 WL 1048023, at *17-18 (D.N.H. Mar. 11, 2016) (holding that the plaintiffs showed that they would suffer irreparable harm from economic losses absent a preliminary injunction because they could not recover monetary damages under the APA); Chef Time 1520 LLC v. Small Bus. Admin., 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (citing cases supporting the conclusion that the lack of availability of money damages for APA claims weighs

22

in favor of a finding of irreparable harm); Nat'l Mining Ass'n v. Jackson, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (quotations omitted)). Here, the economic losses stemming from Liu's inability to work as a research assistant or receive his stipend if his F-1 student status remains terminated constitute irreparable harm.

In addition, Liu's inability to continue his research because of DHS's termination of his F-1 status has significant and irreparable consequences for his academic trajectory. Dartmouth policy states that departmental funding is generally not guaranteed beyond a student's fifth year in the Ph.D. program. Doc. no. 10-16 at 3. Further, students who have not completed the program by the end of their seventh year usually face removal from the program. Id. at 4. Moreover, at this stage of his program, Liu is required to participate in at least two terms of research per year. Id. This delay and threat to Liu's ability to complete his Ph.D. program cannot be redressed and constitute irreparable harm in light of the facts of this case. See Doe v. Noem, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (holding that the plaintiff had demonstrated that he would suffer irreparable harm absent injunctive relief because he "is currently unable to continue in his academic work, and should that condition persist, he faces loss of grants and an inability to complete his degree").

Further, absent injunctive relief, Liu may accrue time during which he is considered out of F-1 status as a result of DHS's actions, which may make it impossible for him to reinstate his status. Absent exceptional circumstances, the USCIS may consider a student's request to reinstate his F-1 status only if he has "not been out of status for more than 5 months at the time

of filing the request for reinstatement." 8 C.F.R. § 214.2(f)(16)(i)(A). Thus, Liu's daily accrual

of time out of F-1 status increases the risk that he will be unable to reinstate his status, which

would in turn mean that he would never be able to continue his research at Dartmouth. Such

harm is irreparable. See, e.g., Patel v. Bondi, No. 1:25-CV-00101, 2025 WL 1134875, at *2

(W.D. Pa. Apr. 17, 2025).

Finally, the termination of Liu's F-1 status and SEVIS record exposes him to the

possibility of removal.[8] The threat of removal constitutes irreparable harm in this case because of

the interplay between Liu's immigration status and his academic and professional development.

If Liu were indeed removed, that "would effectively eliminat[e] his ability to complete his

degree program, causing him economic and reputational loss wherever he ultimately resides."

Doe, 2025 WL 1141279, at *8. Even if Liu were somehow able to repatriate, there is no

guarantee that he could return to his program at Dartmouth—he may need to re-apply for

admission, repeat courses, and restart research. See id. The permanent disruption to Liu's

education would render the past two years he has spent at Dartmouth significantly less valuable

because they would not be attached to a degree. Further, were he to enroll at some other

program, he may not be able to return to some of the research he started at Dartmouth and would

need to start anew.

For these reasons, Liu has shown that he is likely to suffer irreparable harm absent a

preliminary injunction.

---

[8] SEVIS HELP HUB Terminate a Student, Department of Homeland Security,
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-
terminations/terminate-a-student (last visited April 29, 2025). ("When an F-1/M-1 SEVIS record
is terminated, the following happens: . . . Immigration and Customs Enforcement (ICE) agents
may investigate to confirm the departure of the student").

IV.    Remaining Factors

The remaining factors weigh in Liu's favor. "The public has a vested interest in a federal government that follows its own regulations." Doe, 2025 WL 1141279, at *9. The defendants argue that the "public interest in enforcement of United States immigration laws is significant," doc. no. 15 at 33, but they fail to show that DHS has complied with any immigration law or regulation in this case or that Liu's status was revoked due to his failure to comply with any immigration law or regulation. Further, Liu has shown the likely significant hardship that he will endure absent preliminary injunctive relief, and the defendants have shown none.

V.    Bond

Under Federal Rule of Civil Procedure 65(c), in granting a preliminary injunction, the court must require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The court has discretion to waive Rule 65(c)'s bond requirement. See Crowley v. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, & Packers, 679 F.2d 978, 1001 (1st Cir. 1982), rev'd on other grounds, 467 U.S. 526 (1984).

The defendants request that Liu post a security bond, though they do not request a specific amount or explain any costs they will incur by complying with the preliminary injunction, much less any damages they will have sustained if the court later determines that it erred in granting Liu's motion. Therefore, the court exercises its discretion to waive the bond requirement.

25

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for a preliminary injunction (doc. no. 10) is granted. All defendants are (i) enjoined from terminating Mr. Liu's F-1 student status under the SEVIS [Student and Exchange Visitor] system, and (ii) required to set aside their determination that Liu's F-1 student status is terminated. This order shall remain in effect until further order of the court.

SO ORDERED

_____
Samantha D. Elliott
United States District Judge

April 29, 2025

cc: Counsel of Record.

**(B) Preliminary Injunction Order and Opinion, *Doe 1 v. Bondi*, No. 1:25-cv-01998-VMC (N.D. Ga. May 2, 2025), ECF No. 43;**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

JANE DOE 1, et al.,

     Plaintiffs,

v.

PAM BONDI, in her official capacity
as Attorney General of the United
States, et al.,

     Defendants.

Civil Action No.
1:25-cv-01998-VMC

## PRELIMINARY INJUNCTION ORDER AND OPINION

On April 18, 2025, the Court granted Plaintiffs' Amended Motion for a Temporary Restraining Order ("TRO"). (Docs. 19, 23). Among other things, the Court directed Defendants to reinstate Plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025. (Doc. 23 at 15). Pursuant to the Court's Order, Defendants filed a Notice of Compliance confirming that U.S. Immigration and Customs Enforcement ("ICE") manually entered a system change in each Plaintiff's SEVIS record stating the following: "Status changed per court order and ICE direction. Retroactive to March 31, 2025." (Doc. 29). After careful consideration of the Parties' arguments and submissions, the TRO is converted into a preliminary injunction as to all 133 Plaintiffs.

I.      Background

A.      The F-1 Visa Program and SEVIS

The Immigration and Nationality Act ("INA") "sets the terms on which consular officers at U.S. embassies and consulates abroad may issue visas to both prospective 'immigrants' and 'nonimmigrants.'" *Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164, 169 (D.C. Cir. 2022) (citing 8 U.S.C. § 1201(a)(1)). "'Immigrant' visas are issued to foreign nationals intending to move to the United States permanently." *Id.* '"Nonimmigrant' visas are for foreign nationals seeking to come into the country temporarily for an identified purpose." *Id.* Under the INA, a foreign student may enter the United States in a nonimmigrant status to complete a course of study at an approved educational institution. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.2(f). If approved, the State Department will issue a visa allowing the student admission to the United States to pursue a course of study. *See* 22 C.F.R. § 41.61(b)(1). If admitted, the Department of Homeland Security ("DHS") may administratively classify the student as an F-1 nonimmigrant. 8 C.F.R. § 214.1(a)(2). One prerequisite to admission as an F-1 nonimmigrant student is the presentment of Form I-20, which is "issued in the student's name by a school certified by the Student and Exchange Visitor Program (SEVP) for attendance by F-1 foreign students." 8 C.F.R. § 214.2(f)(1)(i)(A). The F-1 student's Form I-20 is endorsed at the time of entry into the United States and

2

the F-1 student is expected to "retain for safekeeping the initial Form I-20 or successor form bearing the admission number and any subsequent Form I-20 issued to them." 8 C.F.R. § 214.2(f)(2).

Once admitted to the United States, an F-1 student is granted permission to remain in the United States for the duration of status (noted as D/S on the relevant document)[1] as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment. 8 C.F.R. § 214.2(f)(6). Students who complete their course of study are entitled to apply for optional practical training ("OPT") directly related to their major area of study, which if approved, enables them to remain for an additional year, or in cases of STEM degrees up to three years.[2] 8 C.F.R. § 214.2(f)(10)(ii).

Congress required that DHS "develop and conduct a program to collect from approved institutions of higher education . . . in the United States [certain information] with respect to aliens who have the status, or are applying for the

---

[1] Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in practical training following completion of studies, except that an F-1 student who is admitted to attend a public high school is restricted to an aggregate of 12 months at any public high school(s). 8 C.F.R. § 214.2(f)(5)(i).

[2] Additionally, some degree programs also allow students to work in their field of study during their course of study under CPT.

3

status, of [F-1] nonimmigrants . . . ." 8 U.S.C. § 1372(a)(1)(A). As a result, the Department of Homeland Security's Student and Exchange Visitor Program ("SEVP") created an online database known as SEVIS. SEVIS is a centralized database maintained by the SEVP and it is used to manage information on nonimmigrant students and exchange visitors to track their compliance with the terms of their status. Under 8 C.F.R. § 214.2(f)(6), Designated School Officials ("DSOs") must report through SEVIS to the SEVP when a student fails to maintain status as described in the Code of Federal Regulations, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than one year. 8 C.F.R. § 214.1(e)-(g). A student who fails to maintain status is removable. 8 U.S.C. § 1227(a)(1)(C)(i).

Separately, the Code of Federal Regulations permits the termination of nonimmigrant status in three specific circumstances: (1) a previously granted waiver under section 212(d)(3) or (4) of the Act is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019).

4

Accordingly, the revocation of an F-1 visa does not constitute failure to maintain status pursuant to the relevant regulations and does not provide a basis to terminate F-1 student status under the SEVIS registration system.[3] Instead, if the visa is revoked, the student is permitted to continue to pursue their course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning. *See* Guidance Directive 2016-03, 9 FAM 403.11-3 — VISA REVOCATION (Sept. 12, 2016). Put differently, F-1 student status and F-1 student visas are not one in the same. The F-1 student visa refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country.

### B. Defendants Terminate Plaintiffs' Records in SEVIS

Here, Plaintiffs are all F-1 student visa holders actively enrolled in colleges and universities throughout the United States, or who have obtained lawful OPT to work under the terms of their student status. (Doc. 15 ¶¶ 6, 9–27). Between April 1, 2025 and April 14, 2025, Plaintiffs received notification from their schools' DSOs informing them that SEVP terminated their SEVIS record and marked Plaintiffs as

---

[3] *See* ICE Policy Guidance 1004-04 — Visa Revocations (June 7, 2010) ("[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record.").

either "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated" or, "Otherwise Failing to Maintain Status" with a narrative citing deportability provisions under 8 U.S.C. § 1227(a)(1)(C), for failure to maintain status, and 8 U.S.C. § 1227(a)(4)(C)(i), for foreign policy grounds. (Doc. 1 ¶ 2).

In the absence of clear communication from Defendants regarding the reason for their SEVIS record termination, Plaintiffs have been left to speculate that their terminations stem from arrest records relating to various misdemeanors, dismissed charges, and traffic citations and as such, have produced evidence relating to the status of those infractions.[4] (*See* Docs. 19-2-19-5). Many of the charges against Plaintiffs were dismissed. Regardless of the conduct alleged, Plaintiffs do not have any criminal history that would warrant their SEVIS records being terminated. Nonetheless, many of the emails from Plaintiffs' DSOs direct Plaintiffs to leave the United States with little notice to prepare to do so. Without a current SEVIS record, Plaintiffs effectively have no legal status and therefore face

---

[4] A sample of Plaintiffs' records include: driving with a suspended or expired license, use of false identification, speeding, driving without insurance, underage alcohol consumption, petty shoplifting or retail theft, driving on a learner's permit, failing to yield, illegal parking, reckless driving, misdemeanor domestic battery or assault, misdemeanor battery, public intoxication, trespass in the second degree, simple assault, disorderly conduct, improper turning, failure to maintain a lane, larceny. (*Id.*). At least one Plaintiff suspects the termination is the result of a mental health crisis where emergency services were called. (*Id.*).

uncertainty about being able to attend classes, graduate, obtain and maintain employment, and keep housing and insurance.

In some, but not all of these cases, the State Department has revoked the student's visa. But as the Court previously explained, the revocation of a visa does not necessarily impact the person's lawful presence in the country. As such, Plaintiffs allege that it is the SEVIS record termination that has rendered them vulnerable to devastating immigration outcomes such as detention and deportation, as well as irreparable harm.

## C.    Procedural Background

On April 11, 2025, seventeen Plaintiffs filed this action. (Doc. 1). Four days later, Plaintiffs amended their Complaint to add 116 Plaintiffs, bringing the total number of Plaintiffs to 133. (Doc. 11). In their four-count Complaint, Plaintiffs seek declaratory and injunctive relief that Defendants violated the Administrative Procedure Act ("APA") when they terminated their records on improper grounds, without prior notice, without an articulated basis for their decision, and without providing Plaintiffs an opportunity to respond. (*Id.* ¶¶ 180-182). Plaintiffs contend that Defendants acted in an arbitrary and capricious manner, inconsistent with the intent and plain language of the Immigration & Nationality Act and its associated regulations, as well as in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. (*Id.* ¶¶ 183-195). The original 17

7

Plaintiffs moved for a TRO and expedited preliminary injunction to temporarily enjoin Defendants from terminating their student status in the SEVIS system and to require Defendants to set aside their termination decisions. (Doc. 4). Plaintiffs amended their motion seeking a TRO and injunction for all 133 Plaintiffs. After considering the briefing and the arguments raised by the Parties at the hearing, the Court granted the TRO on April 18, 2025. (Doc. 19). A hearing on Plaintiffs' request for a preliminary injunction was held on April 24, 2025. In advance of that hearing, Plaintiffs provided two supplemental affidavits. (Doc. 31). Defendants did not submit any additional evidence. The Court also held a status conference wherein the Parties confirmed that there had been no discussions between them regarding Plaintiffs' requested relief, and that the Court needed to rule on the preliminary injunction. (Doc. 39).

## Discussion

## II.     Venue

In its Order granting the TRO, the Court noted that it would consider Defendants' argument on venue, and if appropriate, dissolve the TRO as to the nonresident plaintiffs. Accordingly, the Court will first address the issue of venue.

Defendants argue that venue is improper in this district as to the claims by Plaintiffs who are located in states other than Georgia.[5] (Doc. 24). As such, Defendants request that the Court deny the non-Georgia Plaintiffs' request for relief and dismiss them without prejudice or, in the alternative, transfer their claims pursuant to 28 U.S.C. § 1404(a) to an appropriate district court.[6] Defendants contend that since Plaintiffs are nonresident aliens, no plaintiff can establish residence in Georgia. Thus, the venue provision that Plaintiffs rely upon, 28 U.S.C. § 1391(e)(1)(C), does not apply because it provides that a case may be brought in any judicial district in which at least one plaintiff "resides." 28 U.S.C. § 1391(e)(1)(C). Defendants do not, however, contest the venue for the 27 plaintiffs that are physically present in Georgia. (Doc. 24 at 3 ("Defendants' position is that venue is not proper as to the 106 Plaintiffs who are located outside of Georgia.")).

The Court will treat Defendants' response as a 12(b)(3) motion to dismiss based on "improper venue." Federal Rule of Civil Procedure 12(b)(3) allows a defendant to challenge the propriety of the venue selected by a plaintiff by filing a motion to dismiss on the ground of improper venue. *See* Fed. R. Civ. P. 12(b)(3).

---

[5] Defendants' argument on venue was made in response to supplemental briefing the Court requested from Plaintiffs addressing the same. (Docs. 9, 12).

[6] During the TRO hearing, Defendants suggested that the nonresidents' claims would be appropriately transferred to the District of Columbia. Or, alternatively, that individual plaintiffs should seek to join in the ongoing litigation throughout the nation in the state where they are physically present.

9

When venue is challenged by a Rule 12(b)(3) motion, the plaintiff has the burden of showing that venue in the forum is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (stating that plaintiff must make a prima facie showing of venue). As with a motion to dismiss in general, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "If an allegation in the complaint is challenged, 'the court may examine facts outside of the complaint to determine whether venue is proper' and 'may make factual findings necessary to resolve motions to dismiss for improper venue.'" *In re Blue Cross Blue Shield Antitrust Litig.*, 225 F. Supp. 3d 1269, 1290 (N.D. Ala. 2016) (quoting *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008)). "Where conflict exists between the allegations in the complaint and evidence outside the pleadings, the court 'must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff.'" *Capital Corp. Merch. Banking, Inc. v. Corp. Colocation, Inc.*, No. 6:07-cv-1626-Orl-19KRS, 2008 WL 4058014, at *1 (quoting *Wai*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004)).

Typically, venue for civil actions in federal courts is governed by 28 U.S.C. § 1391, "except as otherwise provided by law." 28 U.S.C. § 1391(a). In actions against the United States, including agencies or officers, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part

10

of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). For venue purposes, a federal agency or officer resides where it "performs its official duties." *Brahim v. Holder*, No. 13-23275-CIV, 2014 WL 2918598, at *2 (S.D. Fla. June 26, 2014); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1307 (N.D. Ala. 2003).

Generally speaking, improper venue is a waivable defense. Fed. R. Civ. P. 12(h)(1). "In a typical waiver scenario" this defense is abandoned when a defendant fails to raise it in either a responsive pleading or a Rule 12 motion. *Matthews v. Brookstone Stores, Inc.*, 431 F. Supp. 2d 1219, 1223 (S.D. Ala. 2006) (citing *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1364 (11th Cir. 2006)); *Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988)). However, a defendant may also waive an improper venue defense "by express waiver, by conduct amounting to waiver as a matter of law, or by failure to interpose a timely and sufficient objection." *United States for use and benefit of NetPlanner Sys. v. GSC Constr., Inc.*, No. 4:16-CV-150 (CDL), 2017 WL 3000027, at *1 (M.D. Ga. Apr. 3, 2017) (citing *Manley v. Engram*, 755 F.2d 1463, 1488 (11th Cir. 1985)).

Here, Defendants expressly assent to venue in this district in their briefing. (*See* Doc. 24 at 5 (noting that "Defendants, therefore, do not contend that venue in

11

this judicial district is improper for the Plaintiffs located in Georgia" even though six Plaintiffs are located outside of this judicial district)). Defendants reiterated this during the April 24 hearing when they stated: "In this case, we've not opposed to having anyone that's within the state . . . Everyone within a state would logically be . . . grouped together for venue purposes." As such, the Court finds that venue in the Northern District of Georgia is proper.[7]

_____

[7] In the absence of Defendants' waiver of venue, the Court would have still determined that venue was proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B), which permits a civil action in which a defendant is an officer or employee of the United States where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1)(B). Transactional venue under 28 U.S.C. § 1391(e)(1)(B) is assessed as it is in the general venue statute, 28 U.S.C. § 1391(b)(2). *E.V. v. Robinson*, 200 F. Supp. 3d 108, 113 n.2 (D.D.C. 2016) ("Because § 1391(e)(1)(B) is identical to 28 U.S.C. § 1391(b)(2), cases construing that general venue provision are 'helpful in construing this provision.'" (quoting 14D Charles Alan Wright et al., Federal Practice and Procedure § 3815 (4th ed. 2013))). The Eleventh Circuit has explained that "[o]nly the events that directly [gave] rise to [the] claim [were] relevant. And of the places where the events [took] place, only those locations hosting a 'substantial part' of the events [were] to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). The events considered relevant are only those acts and omissions that have a close nexus to the wrong. *Id.* at 1372. The Eleventh Circuit underscored that the inquiry should "focus on relevant activities of the defendant, not of the plaintiff." *Id.* at 1371–72.

In this case, Plaintiffs assert causes of action for violations of the Fifth Amendment to the United States Constitution and the Administrative Procedure Act stemming from the termination of their SEVIS records. Plaintiffs argue that because SEVIS terminations were communicated through Georgia-based DSOs and because Defendants notified some DSOs of the terminations, a substantial part of the events giving rise to the claims took place in this district. Defendants devote little time to rebutting Plaintiffs' claim that a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred in Georgia. And when asked by the Court where the events giving rise to Plaintiffs' claims took place, Defendants could not

The Court also finds that permissive joinder of the remaining non-Georgia Plaintiffs is appropriate because Plaintiffs assert claims that arise out of a series of transactions common to the action of the parties where venue is proper with this Court. Fed. R. Civ. P. 20. A party seeking joinder of claimants under Rule 20 must establish two prerequisites: 1) a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences, and 2) some questions of law or fact common to all persons seeking to be joined. Fed. R. Civ. P. 20(a). The Eleventh Circuit has explained that the central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits. *Alexander v. Fulton Cnty.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). Additionally, the Supreme Court has instructed lower courts to employ a liberal approach to permissive joinder of claims and parties in the interest of judicial economy: "Under the Rules, the impulse is towards entertaining the broadest

---

provide an answer because Defendants do not know. Therefore, venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(B).

Finally, Defendants' reliance on the recent decision from the District Court for the Western District of Wisconsin is misplaced. There, the court explained that plaintiffs included no facts to show that venue was proper for the claims brought, which, as explained above, is not the case here. *See Isserdasani v. Noem*, No. 3:25-CV-283, 2025 WL 1118626, at *4 (W.D. Wisc. Apr. 15, 2025). There is ample evidence from Plaintiffs that a substantial part of Defendants' actions giving rise to their claims took place in this district. Thus, venue would be proper even without Defendants' express waiver.

possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966)).

To determine whether Plaintiffs' claims arise out of the same series of transactions under Rule 20(a)(1)(A), the Court applies the "logical relationship" test. *Alexander*, 207 F.3d at 1323. There is a logical relationship among claims where "the same operative facts serve as the basis" for the joined claims. *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985). Here, as the basis for their claims, Plaintiffs challenge Defendants' systemic termination of their SEVIS records in April 2025. These terminations were all executed through the same DHS system (SEVIS) and used nearly identical and vague termination statements, indicating a uniform administrative action instead of individualized determinations tailored to each student. The uniformity and timing of these actions demonstrate that Plaintiffs' claims stem from a common series of transactions or occurrences.[8] Therefore, the Court finds that Plaintiffs have satisfied the first prong for permissive joinder under Rule 20(a)(1)(A).

---

[8] In fact, the Court has learned through public hearings in a related case that the actions taken by Defendants in this case can be traced to a single department action, overseen by Andre Watson, an official with ICE's Counter Thread Lead Development Unit. The initiative, dubbed by immigration officials as the "Student Criminal Alien Initiative," describes a process by which 10 to 20 ICE officials ran 1.3 million names of foreign students through the National Crime Information Center ("NCIC"), a federal database that tracks criminal histories, missing

Rule 20(a)(1)(B) "does not require that *all* questions of law and fact be raised by the dispute be common." *Alexander*, 207 F.3d at 1324. Thus, claims are properly joined so long as they present "*any* question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1)(B) (emphasis added). Here, all Plaintiffs argue that their SEVIS records were terminated without individualized notice or process. Further, all Plaintiffs contest whether Defendants had the authority to terminate their SEVIS record without prior notice, whether visa revocation alone justified such termination, and whether due process protections apply to these actions. And the requested relief—reinstatement of the SEVIS record—is also commonly shared.

Defendants cite a number of cases to dispute the propriety of joinder. *See Parson v. Allstate Ins. Co.*, No. 22-cv-3962, 2023 WL 4999900, at *4 (N.D. Ill. Aug 4, 2023); *Ahmad v. Keisler*, 1:07-CV-2760-CC, 2008 WL 11337699 (N.D. Ga. July 21, 2008); *Sanders v. Callender*, No. DKC 17-1721, 2018 WL 337756, at *13 (D. Md. Jan. 9, 2018); *Ahmed v. Miller*, 452 F. Supp. 3d 721, 726 (E.D. Mich. 2021). These cases,

---

persons, and other brushes with the law, over the course of two to three weeks. The search returned an estimated 6,400 names, which were exchanged with the State Department. ICE testified to using this data to terminate the students' records in SEVIS. Kyle Cheney and Josh Gerstein, *Feds reveal how immigration squad targeted thousands of foreign students*, Politico (April 29, 2025 8:15 PM), https://www.politico.com/news/2025/04/29/immigration-foreign-students-00317437.

15

however, are easily distinguishable. For example, in *Ahmad v. Keisler*, the plaintiffs,

lawful permanent residents from Iraq, sought to have the court adjudicate their

naturalization applications and grant them United States citizenship because of

the defendants' delay. *Ahmad*, 2008 WL 11337699, at *1. In ordering some of the

plaintiffs' claims to be severed, the court explained that "the length of the delays

and the reasons for the delays associated with the [] Plaintiffs' naturalization

applications do not appear to be the same." *Id.* at *2. As such, joinder of plaintiffs

in that action was not proper.

Similarly, in *Ahmed v. Miller*, plaintiffs challenged the delays and denials of

their visa applications for I-130 petitioning relatives in a consular office in Yemen.

*Ahmed*, 452 F. Supp. 3d at 723. There, the court explained that although "the

plaintiffs identified an issue that is common to their claims, [] each plaintiff family

has a separate case to plead." *Id.* at 728. Specifically, the court found that each

group's claim will stand or fall on each one's individual circumstances and as such

would "do very little to secure the just, speedy, and inexpensive determination of

each plaintiff's individual claim." *Id.* (internal quotations omitted).

Conversely, Plaintiffs' claims here stem from a seemingly uniform action

taken by Defendants without individualized notice, affecting their academic

standing and immigration status. (Doc. 28 at 11). Plaintiffs' experiences present

common legal questions such as the legality of Defendants' actions and the

16

applicability of due process protections. Thus, joinder under Rule 20 is proper and promotes judicial efficiency.

## III. Preliminary Injunction

The standard for obtaining a TRO is identical to that of obtaining a preliminary injunction. *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1332 (N.D. Ga. 2018) (citing *Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010)). Therefore, to convert the TRO into a preliminary injunction, Plaintiffs, as the moving party, must establish that they have a: (1) substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the damage to the opposing party; and (4) that granting the injunction would not be adverse to the public interest. *Id.* (citing *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003)). The balance-of-the-harms and public interest elements merge when the government is the party opposing the injunctive relief. *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020).

### A.    Likelihood of Success on the Merits

The Eleventh Circuit instructs district courts to consider the question of whether a plaintiff has a substantial likelihood of success on the merits as "generally the most important" factor in the analysis. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005). "A substantial likelihood of success

17

on the merits requires a showing of only *likely* or probable, rather than *certain*, success." *Id.* Plaintiffs claim that Defendants' termination of their SEVIS record was unlawful for multiple reasons. First, it constitutes agency action not in accordance with law and in excess of statutory authority under the Administrative Procedure Act (Count 1); second, it violates the Due Process Clause of the Fifth Amendment to the Constitution (Count 2); third, it violates the APA by infringing upon constitutional rights protected by the Fifth Amendment (Count 3); and fourth, it is arbitrary and capricious under administrative law (Count 4). (*See* Doc. 19-1 at 67).

The Court finds that based on the allegations in the Amended Complaint and the specific facts in Plaintiffs' 133 declarations, Plaintiffs have demonstrated a substantial likelihood of success on the merits of their claim in Counts 1 and 4: that Defendants' termination of the SEVIS registration exceeds the bounds of statutory and regulatory authority and is therefore unlawful under 5 U.S.C. § 706(2)(A), (C), and (D). The Court makes no findings as to Plaintiffs' other claims.

### 1. SEVIS Record Termination is Final Agency Action

According to the APA, "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review." 5 U.S.C. § 704. For agency action to be deemed final, it must "mark the consummation of the agency's decision-making process" and "the action must be one by which rights or

18

obligations have been determined or from which legal consequences will flow."
*Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Though Defendants argue that there
"are no legal consequences to the termination of a SEVIS record," that is not borne
out by the evidence before the Court. (Doc. 16 at 12).

Plaintiffs provided the Declaration of Nusha Shishegar, a Primary
Designated School Official, as supplemental evidence. (Doc. 31-1). In the
Declaration, Ms. Shishegar explained that the termination of SEVIS has several
consequences, legal or otherwise, for F-1 students. (*Id.*). For example, if SEVIS is
terminated due to any violation of status, the student must either apply for
reinstatement or the student and dependents must leave the United States
immediately. (*Id.* ¶ 13). In addition, USCIS will not approve an OPT employment
authorization document (EAD) if a SEVIS record is terminated. (*Id.* ¶ 11).[9]

Further, "there is no statutory or regulatory requirement that a student seek
reinstatement" of student status in SEVIS, and even if a student attempts to pursue
the administrative procedure for SEVIS reinstatement, there is no mechanism to
review the propriety of the original termination. *Jie Fang*, 935 F.3d at 182; *see* C.F.R.
§ 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS'
decision. If USCIS does not reinstate the student, the student may not appeal the

---

[9] *See also* Department of Homeland Security, *Study in the States*,
https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-
and-terminations/terminate-a-student (last visited May 1, 2025).

decision."). Therefore, the termination of Plaintiffs' SEVIS record was not "of merely tentative or interlocutory nature," but rather a unilateral determination with immediate legal consequences over which Plaintiffs have no ability to seek administrative review. *Bennett*, 520 U.S. at 177–78. Accordingly, termination of the SEVIS registration constitutes a final decision reviewable under the APA. *See Jie Fang*, 935 F.3d at 182 ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

### 2. The Privacy Act Does Not Apply

In their opposition, Defendants argue that although the APA generally waives the government's immunity, that waiver is not applicable here. (Doc. 16 at 6). Specifically, Defendants point to APA section 702, which "preserves 'other limitations on judicial review' and does not 'confer[] authority to grant relief if any other statute . . . expressly or impliedly forbids the relief which is sought.'" (Doc. 16 at 6–7 (citing *Cohen v. United States*, 650 F.3d 717, 724–25 (D.C. Cir. 2011))). Although Plaintiffs have not asserted a claim under the Privacy Act, Defendants contend that Plaintiffs' claims "clearly" implicate the Privacy Act, and that the Privacy Act provides an alternative, adequate remedy to the APA. (*Id.*).

However, Plaintiffs are not merely seeking to correct a factual error in their SEVIS records. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42,

63 (2024) (explaining that the Privacy Act was passed "to protect the privacy of individuals identified in federal information systems" and "addresses the government's retention and disclosure of personal information" while allowing "individuals to seek a court order requiring it to correct its records"). Plaintiffs allege that DHS unlawfully terminated their F-1 student status by terminating their SEVIS records for an improper reason. Their allegations challenging DHS's action go well beyond seeking to correct a record that is "inaccurate, irrelevant, untimely or incomplete." *See* 5 U.S.C. § 552a(d)(2)(B). Plaintiffs are instead challenging the decision that led to the unlawful termination of their SEVIS records.

Even if there is some overlap, the United States Supreme Court has stated that "we approach federal statutes touching on the same topic with a 'strong presumption' they can exist harmoniously" and "[o]nly by carrying a 'heavy burden' can a party convince us that one statute 'displaces' a second." *Kirtz*, 601 U.S. at 63. Relying on *Kirtz*, one appellate court has determined that the "availability of a Privacy Act suit . . . does not take [the] case[] outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims." *All. for Retired Ams. v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 740401, at *19 (D.D.C. Mar. 7,

2025). Therefore, the Court agrees with Plaintiffs that Defendants' argument that the Privacy Act supplants their APA claims is a red herring.

Moreover, as Defendants point out, Plaintiffs do not have the ability to seek relief under the Privacy Act. (Doc. 16 at 8). The Privacy Act provides that an "individual" is "a citizen of the United States or an alien lawfully admitted for permanent residence." (*Id.* (citing 5 U.S.C. § 552a(a)(2))), but Plaintiffs are neither U.S. citizens nor lawful permanent residents, and therefore fall outside of the purview of the Privacy Act. Without more authority, the Court declines to find that the only statute Plaintiffs can use to seek relief is one that they are not covered by.

Finally, the relief available under the Privacy Act is actual damages. *Williams v. U.S. Citizenship & Immigr. Servs.*, No. 23-cv-61124, 2023 WL 8079947, at *6 (S.D. Fla. Nov. 21, 2023) (quoting *Stewart v. Kendall*, 578 F. Supp. 3d 18, 23 (D.D.C. 2022)); *FAA v. Cooper*, 566 U.S. 284, 298 (2012). Plaintiffs' Complaint seeks only declaratory and injunctive relief. (Doc. 11 at 67–68). As such, Defendants' argument that Plaintiffs can't seek relief under the APA fails.

### 3. The SEVIS Terminations Were Arbitrary and Capricious and Not in Accordance with the Law

Finally, because Defendants argue that the SEVIS terminations did not constitute final agency action, they fail to address Plaintiffs' substantive claim regarding whether DHS's act of terminating their record was actually "arbitrary,

22

capricious, an abuse of discretion, or otherwise not in accordance with the law." §
706(2)(A).

Agency action is considered arbitrary and capricious if "the agency has
relied on factors which Congress has not intended it to consider, entirely failed to
consider an important aspect of the problem, offered an explanation for its
decision that runs counter to the evidence before the agency, or is so implausible
that it could not be ascribed to a difference in view or the product of agency
expertise." *Motor Vehicle Mfrs. Ass'n of U.S, Inc. v. State Farm Mut. Auto Ins. Co.*, 463
U.S. 29, 43 (1983). "The 'arbitrary-and-capricious standard' requires that agency
action be reasonable and reasonably explained.'" *Bidi Vapor LLC v. FDA*, 47 F.4th
1191, 1202 (11th Cir. 2022) (quoting *FCC v. Prometheus Radio Project*, 592 U.S. 414,
423 (2021)). "It follows that agency action is lawful only if it rests 'on a
consideration of the relevant factors.'" *Michigan v. EPA*, 576 U.S. 743, 750 (2015)
(quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).

Defendants have had ample opportunity to provide the Court with
additional information about the SEVIS terminations but have consistently failed
to do so. In the two hearings the Court has had to address this issue, Defendants
have not been able to articulate, clearly or otherwise, any reason why Plaintiffs'
SEVIS records were terminated beyond the vague language provided in the notice
given through SEVP. When asked whether Defendants could provide the Court

23

with any additional information about what actually happened with Plaintiffs'
SEVIS records, Defendants conceded that they could not complete the necessary
factfinding to determine what took place as to each individual Plaintiff, or even as
to the entire group of Plaintiffs. Further, Defendants' briefing fails to identify any
regulation to support DHS's ability to terminate Plaintiffs' SEVIS record in the
manner it was done here.

Defendants have altogether failed to suggest any lawful grounds for
termination of Plaintiffs' SEVIS record. *Motor Vehicle Mfrs.*, 463 U.S. at 50.
Defendants' failure to provide a single plausibly lawful explanation for its action
is the exact circumstance contemplated by the arbitrary and capricious standard.
*Id.* Accordingly, Plaintiffs are likely to prevail on the claim that the agency action
is arbitrary and capricious for failing to articulate a satisfactory explanation for its
action including a rational connection between the facts found and the choice
made. *Id.* at 43.

The Court concludes that Plaintiffs are likely to show that DHS's authority
to terminate F-1 student status is narrowly circumscribed by regulation to three
circumstances: by the revocation of a waiver authorized on his or her behalf under
section 212(d)(3) or (4) of the Act; by the introduction of a private bill to confer
permanent resident status on such alien; or, pursuant to notification in the Federal
Register, on the basis of national security, diplomatic, or public safety reasons. 8

24

C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185 n.100 (explaining that the ability to terminate F-1 status is limited by § 214.1(d)). And since none of those conditions are applicable here, Plaintiffs are likely to show that Defendants' termination of their SEVIS records and F-1 status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A).

## B.    Substantial Threat of Irreparable Injury

Plaintiffs must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is "harm that could not be sufficiently compensated by money damages or avoided by a later decision on the merits." *Canon, Inc. v. GCC Int'l, Ltd.*, 263 F. App'x 57, 62 (Fed. Cir. 2008).

Given the number of Plaintiffs, the Court will not include a description of each harm described by Plaintiffs in the Amended Complaint and the declarations accompanying the Amended TRO Motion. (*See* Docs. 11, 19). Nonetheless, Plaintiffs have demonstrated that they face several forms of irreparable harm in the absence of temporary relief. Plaintiffs declare that as a result of the SEVIS terminations, they will lose scholarships, career opportunities, research grants, access to education, and the ability to apply for OPT. (*See* Doc. 4-2). Plaintiffs fear that they will abruptly have to leave behind family, cancel marriage plans, and abandon their communities in order to avoid detention or being labeled a national

25

security or foreign policy threat. Many Plaintiffs are mere weeks away from attaining their degrees. (Doc. 4-2 at 34, 40). The loss of timely academic progress alone is sufficient to establish irreparable harm. Additionally, all Plaintiffs report high levels of stress and anxiety resulting from the uncertainty around their futures. If Plaintiffs cannot work or study, they cannot remain in the United States legally and will therefore be subjected to removal proceedings or forced to return to their native countries on their own.

Plaintiffs' fears are not speculative, as DHS's own public-facing guidance states that a person whose SEVIS record is terminated faces the following consequences: "loses all on- and/or off-campus employment authorization," the student "cannot re-enter the United States on the terminated SEVIS record," "Immigration and Customs Enforcement (ICE) agents may investigate to confirm the departure of the student," and "[a]ny associated F-2 or M-2 dependent records are terminated."[10]

In addition, Plaintiffs have shown that as a result of the termination of their SEVIS records, they will be unable to continue their classes, research programs, and/or Ph.D. programs. This threat to Plaintiffs' ability to complete their degrees cannot be redressed and constitutes irreparable harm in light of the facts in this

---

[10] *See* Dep't of Homeland Security, *SEVIS Help Hub: Terminate A Student*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 1, 2025).

case. *See Gegas v. St. Matthew's Univ. School of Med.*, No. 6:22-cv-2299-PGB-EJK, 2023 WL 6294410, at *5 (M.D. Fla. Sept. 4, 2023) (collecting cases where various courts have found that a forced delay in graduation can demonstrate irreparable harm); *Doe v. Noem*, No. 2:25-CV-00633-DGE, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (finding that the plaintiff had demonstrated that he would suffer irreparable harm absent injunction because he "is currently unable to continue in his academic work, and should that persist, he faces loss of grants and an inability to complete his degree."); *Liu v. Noem*, No. 25-cv-133-SE, 2025 WL 1233892, at *11 (D.N.H. Apr. 29, 2025) (finding that plaintiff's "inability to continue his research because of DHS's termination of F-1 status" has significant and irreparable consequences for his academic trajectory and thus constitutes irreparable harm).

Some courts have specifically held that loss of opportunity to participate in post-secondary education programs is an irreparable harm. *See Maria v. Loyola Univ. of Chi. Strict Sch. Of Med.*, No. 24 C 1698, 2025 WL 96482, at *8 (N.D. Ill. Jan. 14, 2025) (accepting that loss of opportunity to participate in psychiatry residency is an irreparable harm, but denying injunction on other grounds); *Lujan v. U.S. Dep't of Educ.*, 664 F. Supp. 3d 701, 721 (W.D. Tex. 2023) (finding that erroneous loss of even one point on Fulbright scholarship application grading would be an irreparable harm, due to loss of opportunity to obtain scholarship). Under these unique circumstances where Plaintiffs' continued work and lawful immigration

status are interlinked, the prospect of Plaintiffs losing their grant-funded work as doctoral candidates or otherwise are likewise irreparable. *Doe*, 2025 WL 1141279, at \*7 (citing *Karakozova v. Univ. of Pittsburgh*, No. 09CV0458, 2009 WL 1652469, at \*4 (W.D. Pa. June 11, 2009) for the proposition that a research assistant on an H-1B visa could show irreparable harm from loss of position due to its link to her immigration status).

Further, the evidence establishes that Plaintiffs have suffered and will continue to suffer significant monetary losses, including loss of scholarships traceable to the termination of their SEVIS records, that are not recoverable, which constitutes irreparable harm. *See Georgia v. President of the United States*, 46 F.4th 1283, 1302 (11th Cir. 2022) (stating that "unrecoverable monetary loss is an irreparable harm"); *Alabama v. U.S. Sec'y of Educ.* No. 24-12444, 2024 WL 3981994, at \*4 (11th Cir. Aug. 22, 2024) (same). Further, economic losses such as Plaintiffs' can be considered irreparable harm because there are no adequate remedies at law to recover for their damages. *See, e.g.*, *Chef Time 1520 LLC v. Small Bus. Admin.*, 646 F. Supp. 3d 101, 115–16 (D.D.C. 2022) (collecting cases supporting the conclusion that the lack of availability of money damages for APA claims weighs in favor of a finding of irreparable harm); *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 52 (D.D.C. 2011) ("[I]f a movant seeking a preliminary injunction will be unable to sue to recover any monetary damages against a government agency in the future

28

because of, among other things, sovereign immunity, financial loss can constitute irreparable injury." (quotations omitted)).

Finally, Plaintiffs will accrue unlawful presence as long as they lack lawful F-1 status and face possible detention or deportation as a result.[11] (Doc. 19-1 at 72). Once it reaches a certain point, unlawful presence time will bar future admission and re-entry to the United States. *See* 8 U.S.C. § 1182(a)(9)(B). Other courts have found that the accrual of unlawful presence time under these circumstances is an irreparable harm because it may subject a person to lengthy re-entry bars that are not judicially reviewable. *Doe*, 2025 WL 1141279, at *8 (collecting cases).

These harms could not be sufficiently compensated with monetary damages or avoided by a later decision on the merits. *See Isserdasani*, 2025 WL 1118626, at *6 (granting a motion for a temporary restraining order on an APA claim based on the termination of an F-1 international student's record in SEVIS); *Roe v. Noem*, No. 25-40-BU-DLC, 2025 WL 1114694, at *4 (D. Mont. Apr. 15, 2025) (same);

---

[11] In related cases, Government defendants have taken the position that individuals with F-1 status are not out of status once the SEVIS record has been terminated. However, as described previously, the Government's own website states that there is no grace period for individuals who are out of status. *See* Dep't of Homeland Security, *SEVIS Help Hub: Terminate A Student*, https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student (last visited May 1, 2025). Though it may not be the policy of Defendants at this moment to consider a nonimmigrant with a terminated SEVIS record unlawfully present, policies change. The Court cannot say with certainty that absent the restoration of the SEVIS records, the Plaintiffs would not be accruing unlawful presence.

*Ratsantiboon v. Noem*, No. 25-CV-01315, 2025 WL 1118645, at *3 (D. Minn. Apr. 15, 2025) (same); *Hinge v. Lyons*, No. 25-1097, 2025 WL 1134966, at *6 (D.D.C. Apr. 15, 2025) (same); *Liu*, 2025 WL 1233892, at *10 (same).

The Court is aware of the public filings in other SEVIS cases that ICE announced a new policy generally applicable to F-1 nonimmigrant students and their SEVIS records. *See Liu*, 2025 WL 1233892, at *2. As a result of this new policy, the Court held a telephone conference on April 30, 2025 to determine whether Plaintiffs' concerns were now moot. During the conference, Defendants took the position that the policy was not final, and thus it was not clear the effect the policy would have on the Plaintiffs in this case.[12] As such, Plaintiffs concerns are not moot, and they still face a real threat of irreparable harm.

## C.     Balance of Harms and Public Interest

The third and fourth preliminary injunction requirements—that the threatened injury to the movant outweighs any harm to the non-movant and that an injunction is not adverse to the public interest—merge when, as here, the government is the party opposing the motion. *Koe v. Noggle*, 688 F. Supp. 3d 1321, 1358 (N.D. Ga. 2023) (citing *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020)). "The third element" of that analysis "looks to the competing claims of injury,

---

[12] At a previous hearing Defendants suggested that policies do not confer the same rights as law and regulations do. The Court appreciates that Defendants did not rely on this new policy to argue otherwise.

requiring the court to consider the effect on each party of the granting or the withholding of the requested relief." *De La Fuente v. Merrill*, 214 F. Supp. 3d 1241, 1249 (M.D. Ala. 2016) (quoting *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008)) (internal quotations omitted).

For the reasons set forth above, Plaintiffs have satisfied both factors. First, the balance of harms weigh in Plaintiffs' favor. Plaintiffs stand to lose their lawful status, access to education, and future career prospects. By contrast, the temporary nature of the requested relief poses minimal harm to Defendants. Defendants assert that SEVIS does not control or even necessarily reflect whether a student has lawful nonimmigrant status. (Doc. 16 at 2). If that is so, then restoring Plaintiffs to the status quo before their SEVIS records were terminated has no effect on the Executive's "control over immigration," Defendants' only stated harm. (*Id.* (citing *El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Review*, 959 F.2d 742, 750 (9th Cir. 1992)). Considering the record evidence as discussed in the previous sections of this Order, the Court determines that the imminent risk of irreparable harm to Plaintiffs flowing from the termination of their SEVIS records outweigh any harm Defendants will experience from the preliminary injunction.

Plaintiffs have repeatedly emphasized that they are not seeking to limit the Executive's power; instead, they are asking Defendants to exercise that power in accordance with their own laws and regulations. And the Court agrees that there

31

is substantial public interest in ensuring government agencies abide by federal laws even when they are pursuing their prerogatives. *See Kansas v. U.S. Dep't of Labor*, 749 F. Supp. 3d 1363, 1380 (S.D. Ga. Aug. 26, 2024) (citing *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022)); *see also Florida v. Dep't of Health and Hum. Servs.*, 19 F.4th 1271, 1315 (11th Cir. 2021) (Lagoa, J., dissenting) ("[T]here is no public interest in the perpetuation of unlawful agency action. To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016))).

Lastly, the Court addresses Defendants' argument that Plaintiffs are "not seeking a prohibitory injunction to preserve the status quo," but are "instead seek[ing] a mandatory injunction to order DHS to reverse its termination of Plaintiff's SEVIS record." (Doc. 16 at 2). Courts have long held that the status quo for the purposes of considering a temporary restraining order or preliminary injunction refers to the last peaceable uncontested status existing between the parties before the dispute developed. *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974) ("If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to prevent the injury, either by returning to the last uncontested status quo between the parties, by the issuance of a mandatory injunction, or by allowing the parties to take

proposed action that the court finds will minimize the irreparable injury."

(citations omitted));[13] *see also Nutra Health, Inc. v. HD Holdings Atlanta, Inc.*, No.

1:19-cv-05199-RDC, 2021 WL 5029427, at *2 (N.D. Ga. June 29, 2021) (citing *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1013 (10th Cir.

2004) for the proposition that "[s]tatus quo does not mean the situation existing at the moment the lawsuit is filed, but the last peaceable uncontested status existing between the parties before the dispute developed.").

Accordingly, the Court concludes that all four factors favor granting Plaintiffs' request for a preliminary injunction.

### D.    Security

Finally, the Court exercises its discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure. *BellSouth Telecomms. Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005); *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338, 1359–61 (N.D. Ga. 2022).

---

[13] The Eleventh Circuit has adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

## Conclusion

Based on the foregoing, it is **ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Amended Motion for Temporary Restraining Order (Docs. 4, 19) is **GRANTED** and the TRO is converted into a preliminary injunction.

The Court finds that Plaintiffs are likely to succeed on the merits as to their claims that Defendants violated the APA by acting arbitrary, capriciously, and not in accordance with law by terminating Plaintiffs' SEVIS records. Furthermore, Plaintiffs have demonstrated a substantial threat of irreparable harm. The Court also finds that the balance of harms and the public interest in ensuring Defendants follow the law weigh in favor of injunctive relief.

The Court previously ordered that "Defendants shall reinstate Plaintiffs' student status and SEVIS authorization, retroactive to March 31, 2025." (Doc. 23 at 15). In order to comply, "ICE manually entered a system change comment stating the following: Status changed per court order and ICE direction. Retroactive to March 31, 2025." (Doc. 29 at 1). To maintain Plaintiffs' status quo as lawful nonimmigrants while this case is pending, Defendants are enjoined from unlawfully terminating Plaintiffs' SEVIS records or reversing the reinstatement of Plaintiffs' SEVIS records absent further Court order. To avoid any confusion, the Court notes that this Order does not enjoin Defendants from taking lawful action

34

that could change Plaintiffs' status; the Court only enjoins Defendants from the

unlawful termination of Plaintiffs' SEVIS records.

     **SO ORDERED** this 2nd day of May, 2025.

                                               _____

                                               Victoria Marie Calvert
                                               United States District Judge

**(C) Preliminary Injunction Order, *Parra Rodriguez v. Noem*, No. 3:25-cv-00616-SRU (D. Conn. May 1, 2025), ECF No. 30.**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

FLOR PARRA RODRIGUEZ,
      Plaintiff,

      v.

KRISTI NOEM, et al.,
      Defendants.

No. 3:25-cv-616 (SRU)

## PRELIMINARY INJUNCTION ORDER

On April 18, 2025, Plaintiff Flor Parra Rodriguez ("Parra Rodriguez") filed a complaint against Secretary of the U.S. Department of Homeland Security Kristi Noem, U.S. Immigration and Customs Enforcement Acting Director Todd Lyons, the U.S. Department of Homeland Security, and U.S. Immigration and Customs Enforcement (collectively, "Defendants"). *See generally* Doc. No. 1.  Parra Rodriguez's complaint raises three claims: (1) unlawful termination of her SEVIS record in violation of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*; (2) violation of procedural due process in violation of the APA, 5 U.S.C. § 701, *et seq.*; and (3) violation of the Fifth Amendment of the United States Constitution.  Am. Compl., Doc. No. 15 at 14-16.

That same day, Parra Rodriguez moved for a temporary restraining order ("TRO"), preliminary injunction, or stay under 5 U.S.C. § 705 that:  (1) Orders Defendants to restore Parra Rodriguez's SEVIS record to prevent ongoing harm to her and set aside their termination decision, pending resolution of this litigation; (2) Enjoins or stays Defendants from taking adverse immigration action against Parra Rodriguez as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings against Parra Rodriguez or detaining her



due to her immigration status; and (3) Enjoin[s] Defendants from unlawfully terminating Parra Rodriguez's F-1 student status under the SEVIS system.  *See* Doc. No. 4 at 1; Doc. No. 4-1 at 6.

For the following reasons, Parra Rodriguez's motion for a preliminary injunction is **granted**, **Doc. No. 4.**

## I.       Background

Congress enacted 8 U.S.C. § 1101(a)(15)(F)(i) to provide the statutory basis and process for obtaining student visas.  *See* Am. Compl., Doc. No. 15 ¶ 35.  Student visas, or F-1 visas, allow foreign students to attend a U.S. college or university under certain conditions, including: (1) pursuing "a full course of study" in an approved academic institution; (2) possessing "sufficient funds to cover expenses while in the United States[;]" and (3) intending "to depart on termination of student status."  22 C.F.R. § 41.61; 8 C.F.R. § 214.1(a)(2) (classing nonimmigrant student visas under 8 U.S.C. § 1101(a)(15)(F)(i) as "F-1" visas).  Additionally, according to the Foreign Affairs Manual ("FAM"), the "Student Exchange and Visitor Information System (SEVIS) is designed to monitor the academic progress, movement, etc. of foreign students . . . from entry into the United States to departure."  9 FAM 402.5-4(A).[1]  "The Student and Exchange Visitor Program (SEVP) manages SEVIS."  *Id.*  A division within Immigration and Customs Enforcement ("ICE") administers the SEVP.  *Id.*

---

[1] "The [United States State] Department articulates official guidance, including procedures and policies, on matters relating to Department management and personnel in the Foreign Affairs Manual (FAM) and the Foreign Affairs Handbook (FAH) series. . . . The FAMs and FAHs that are publicly available are located on the Department's public website, at https://fam.state.gov/."  22 C.F.R. § 5.5.  *See also* U.S. Dep't of State, *Foreign Affairs Manual: Public*, https://fam.state.gov/ (last visited May 1, 2025) ("The Foreign Affairs Manual (FAM) and associated Handbooks (FAHs) are a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies. The FAM (generally policy) and the FAHs (generally procedures) together convey codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates.").

"[T]he SEVIS record is the definitive record of student or exchange visitor status and visa eligibility." 9 FAM 402.5-4(B).  A foreign student's SEVIS record determines whether the student is issued a visa.  *Id.* ("You should issue [F-1 visas] only to visa applicants whose SEVIS record indicates a SEVIS status of 'initial' or 'active.'").  All foreign students, except those sponsored by the U.S. government, must pay the SEVIS fee before interviewing for a visa.  9 FAM 402.5-4(C); U.S. Immigr. & Customs Enf't, *I-901 SEVIS Fee Frequently Asked Questions*, https://perma.cc/23VM-5QK7 (last visited May 1, 2025) (listing the SEVIS fee for an F-1 visa as $350).  To maintain their status, foreign students with F-1 visas must work toward completing a "full course of study" and abide by certain employment guidelines.  8 C.F.R. §§ 214.2(f)(6), (9).

Parra Rodriguez is a citizen and national of Mexico physically present in the U.S. and currently a full-time Ph.D. student at Yale University ("Yale").  Am. Compl., Doc. No. 15 ¶¶ 2, 21; Parra Rodriguez Aff., Doc. No. 25 ¶ 4.  Yale employs her as a teaching assistant, and she intends to work as a research assistant at Yale during the summer of 2025.  Am. Compl., Doc. No. 15 ¶¶ 2, 21; Parra Rodriguez Aff., Doc. No. 25 ¶ 4.  Most recently, she renewed her F-1 visa in July 2023 after Yale accepted her as a Ph.D. student; her visa was valid until July 13, 2027. Am. Compl., Doc. No. 15 ¶ 2; Doc. No. 4-1 at 6-7.  Parra Rodriguez was last admitted to the United States on F-1 student visa status on March 2, 2025.  Am. Compl., Doc. No. 15 ¶ 2; Doc. No. 4-1 at 6-7; Parra Rodriguez Aff., Doc. No. 25 ¶ 4.  Parra Rodriguez alleges that, "at all times," she has "properly maintained her status" by sustaining "a course load sufficient to qualify as a full-time student," not being unlawfully employed, and not "otherwise violat[ing] the terms of her F-1 student visa."  Am. Compl., Doc. No. 15 ¶¶ 22, 34.  The Defendants have not suggested otherwise.

Between 2018 and 2022, Parra Rodriguez held an F-1 visa to attend college in the United States. *Id.* ¶ 3; Parra Rodriguez Aff., Doc. No. 25 ¶ 5. Parra Rodriguez alleges she was regularly and lawfully admitted to the United States on an F-1 student visa throughout her studies. Am. Compl., Doc. No. 15 ¶ 3. Although she was charged with retail theft on or around August 13, 2019, the charge was dropped and the court "entered a disposition of not guilty" on December 30, 2019. *Id.* ¶¶ 4, 23; Parra Rodriguez Aff., Doc. No. 25 ¶¶ 6-7. Therefore, Parra Rodriguez "has no criminal conviction" based on that charge. Am. Compl., Doc. No. 15 ¶ 24. Further, Parra Rodriguez "provided records of this non-conviction to the Department of State when applying to renew her F-1 visa, and her visa was renewed without issue." *Id.;* Parra Rodriguez Aff., Doc. No. 25 ¶ 8.

On April 10, 2025, Parra Rodriguez received an email from the U.S. State Department stating that "additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 13-Jul-2027 has been revoked under Section 221(i) of the United States Immigration and Nationality Act[.]" Am. Compl., Doc. No. 15 ¶¶ 5, 26; Parra Rodriguez Aff., Doc. No. 25 ¶ 9. The email also notified Parra Rodriguez that:

> Remaining in the United States without lawful immigration status can result in fines, detention and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

Am. Compl., Doc. No. 15 ¶¶ 6, 27; Parra Rodriguez Aff., Doc. No. 25 ¶ 11. On the same day, Parra Rodriguez received an email from her "Designated School Official" ("DSO") at Yale. Am. Compl., Doc. No. 15 ¶¶ 8, 31; Parra Rodriguez Aff., Doc. No. 25 ¶ 12. Her DSO advised Parra Rodriguez that, as of April 9, 2025, her "SEVIS record had been terminated by the Department of Homeland Security" ("DHS"). *Id.* In the email, her DSO stated the reason for Parra

4

Rodriguez's SEVIS record termination was "[i]ndividual identified in [a] criminal records check and/or has had their visa revoked. SEVIS record has been terminated." *Id.*

Parra Rodriguez was informed that Yale did not make the decision to terminate the SEVIS record.  Am. Compl., Doc. No. 15 ¶ 32; Parra Rodriguez Aff., Doc. No. 25 ¶ 12. Nonetheless, Yale advised Parra Rodriguez that, effectively immediately, she would "lose her position as a Teaching Assistant and the funding for that position because of Defendants' termination of her SEVIS record."  Am. Compl., Doc. No. 15 ¶ 9.  *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 13.

DHS and ICE provided "no advance warning or any other formal notification . . . [of] their intent to revoke her visa and terminate her SEVIS record."  Am. Compl., Doc. No. 15 ¶ 10. Notably, Parra Rodriguez "received no formal SEVIS [record] termination notice from ICE or any other agency."  *Id.* ¶ 33.

Parra Rodriguez alleges that "there was no new information available to Defendants that had not been previously disclosed to government agencies and [warranting] the revocation of [her] visa and termination of her SEVIS account."  *Id.* ¶ 12, 30. *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 10 ("[T]he Department of State already knew about this charge and result.  I have had no other contact with the authorities in the United States since that incident over five years ago.").  Further, Defendants' termination of Parra Rodriguez's SEVIS record subjects her to "the imminent possibility of unlawful presence, detention, deportation, and future visa restrictions." Am. Compl., Doc. No. 15 ¶ 13. *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 14.

## II.    Procedural History

On April 18, 2025, Parra Rodriguez filed her complaint under the pseudonym Jane Doe and moved for injunctive relief.  *See generally* Docs. No. 1, 4.  On April 19, 2025, I issued an

order to preserve jurisdiction. Doc. No. 7. That order states that: "the Defendants, their officers, agents, servants, employees, and attorneys, as well as all persons in active concert or participation with them, are enjoined from removing the plaintiff from the District of Connecticut or deporting the plaintiff from the United States. . . . This order shall remain in effect until further order of the court, to preserve this court's jurisdiction to consider the merits of the case." *Id.* at 3.

On April 21, 2025, I held a hearing to discuss Parra Rodriguez's anonymity and a briefing schedule for the Defendants' response to Parra Rodriguez's motion for a temporary restraining order, preliminary injunction, or stay. After the hearing, Parra Rodriguez filed an amended complaint in which she disclosed her identity on April 21, 2025. Doc. No. 15.

On April 24, 2025, I notified the parties that, at the April 29 hearing on Parra Rodriguez's motion, I would consider whether to grant a temporary restraining order, preliminary injunction, or stay. Doc. No. 22.

During the April 29 hearing, the parties confirmed that Defendant DHS restored Parra Rodriguez's SEVIS record on April 26, 2025. Additionally, her teaching assistant position was reinstated due to her SEVIS record reactivation. However, there remains a gap in Parra Rodriguez's SEVIS record during the time after Defendants terminated it, from April 9, 2025 to April 26, 2025.

## III.     Standard of Review

Federal Rule of Civil Procedure 65 requires courts to give notice to the adverse party before issuing a preliminary injunction; a court may issue a TRO without written or oral notice. Fed. R. Civ. P. 65(a)-(b). Every preliminary injunction and TRO must: "[] state the reasons why it issued; [] state its terms specifically; and [] describe in reasonable detail—and not by referring

6

to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1).

"It is well established that in this Circuit the standard for [entering] a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) (collecting cases). To obtain a preliminary injunction, the plaintiff must show: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). A movant seeking to demonstrate a likelihood of success on the merits "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *overruled on unrelated grounds by O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). Additionally, plaintiffs "need not show that there is a likelihood of success on the merits of all of their claims for relief. Rather, they must show a likelihood of success on the merits of at least one of their claims." *Westchester Legal Servs., Inc. v. Westchester Cnty.*, 607 F. Supp. 1379, 1382 (S.D.N.Y. 1985).

However, where a movant seeks a "mandatory preliminary injunction that alters the status quo," rather than a "prohibitory injunction seeking only to maintain the status quo," the burden of proof is more stringent. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). In that instance, a movant must demonstrate a "clear" or "substantial" likelihood of success on the merits. *See Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

IV.     **Discussion**

   A.  <u>Whether Parra Rodriguez is likely to succeed on the merits of her underlying claims</u>

        Parra Rodriguez's complaint brings three counts:  (1) unlawful termination of her SEVIS

record in violation of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 701, *et seq.*; (2)

violation of procedural due process in violation of the APA, 5 U.S.C. § 701, *et seq.*; and (3)

violation of the Fifth Amendment due process clause of the United States Constitution.  Am.

Compl., Doc. No. 15 at 14-16.  For the following reasons, I find she is likely to succeed on the

merits of count one of her complaint.  Because Parra Rodriguez only needs to show she is likely

to succeed on one claim, I do not analyze whether she is likely to succeed on her remaining two

claims.  *Westchester Legal Servs., Inc.*, 607 F. Supp. at 1382.

   1.  *Unlawful termination of her SEVIS record in violation of the APA, 5 U.S.C. § 701,* et
        seq.

        F-1 visa revocation and SEVIS record termination are separate processes with distinct

preconditions.  ICE policy guidance states that "[v]isa revocation is not, in itself, a cause for

termination of [a] student's SEVIS record."  Student and Exchange Visitor Program – Policy

Branch, U.S. Immigr. & Customs Enf't, U.S. Dep't of Homeland Sec., SEVP Policy Guidance

1004-04 – Visa Revocations 3 (June 7, 2010), https://perma.cc/ZM2S-R6Z6 (last visited May 1,

2025) (Attached as Exhibit A to this Order.).  Revoking a student's F-1 visa does not

automatically require the student to leave the country or lead to them accumulating unlawful

presence.  A student present in the United States under an F-1 visa may remain lawfully present

in the United Status even if their F-1 visa is revoked so long as they "maintain status."  22 C.F.R.

§ 41.122 (listing the grounds for visa revocation but not stating a revoked visa equates to

unlawful presence).  However, a student whose visa is revoked may be denied re-entry if they

leave the United States and attempt to return.

There are two ways a student's SEVIS record can be lawfully terminated:  if a student fails to "maintain their status" or if the agency terminates their status.  8 C.F.R. § 214.2(f)(5); 8 C.F.R. § 214.1(d).  "Maintaining status" refers to a nonimmigrant student's "F-1 status."  *See* 8 C.F.R. § 214.1(a)(2)-(3) (designating nonimmigrant student classification as "F-1" and discussing maintenance of status).  Whether a student maintains their F-1 status is entirely separate from whether a student obtains or holds an F-1 visa.  *Compare* 8 C.F.R. § 212.1 (describing a "valid unexpired visa" as a "documentary requirement") *with* 8 C.F.R. § 214.2(f)(5) ("Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students . . . .").  An F-1 visa is solely a document used to enter the United States.  U.S. Dep't of State, Bureau Consular Affs., *What is a U.S. Visa?*, https://perma.cc/8SEJ-6TAS (last visited May 1, 2025) ("A citizen of a foreign country who seeks to enter the United States generally must first obtain a U.S. visa, which is placed in the traveler's passport, a travel document issued by the traveler's country of citizenship.").

To maintain their status, an F-1 visa holder must "pursu[e] a full course of study at an educational institution certified by SEVP for attendance by foreign students" and not "violate[] the terms of their student visa."  8 C.F.R. § 214.2(f); Doc. No. 4-1 at 11-12 (citing 8 C.F.R. §§ 214.1(e)-(g)).  F-1 visa terms prohibit: (1) engaging in unauthorized employment; (2) providing false information; and (3) being convicted for a crime of violence "for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)."  8 C.F.R. §§ 214.1(e)-(g).

Defendants may terminate an F-1 visa holder's *status* in three defined scenarios.  A nonimmigrant student's "status . . . shall be terminated by the revocation of a waiver authorized

on his or her behalf under section 212(d)(3) or (4) of the Act;[2] by the introduction of a private bill to confer permanent resident status on such [nonimmigrant student]; or, pursuant to notification in the Federal Register, on the basis of national security, diplomatic, or public safety reasons." 8 C.F.R. § 214.1(d). Neither party alleges that any of those three situations apply to Parra Rodriguez.[3] *See* Doc. No. 4-1 at 13 ("Plaintiff was not previously granted a waiver under INA § 212(d)(3) or (4), no private bill to confer her with lawful permanent residence has been introduced in Congress, and DHS has not published a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for the termination."); Doc. No. 26 at 17.

Pursuant to the APA, a court reviewing an agency's decision "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(a)(2)(A). Parra Rodriguez argues that "Defendants' termination of her SEVIS record was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." Doc. No. 4-1 at 11. The only explanation Defendants provided for why they terminated Parra Rodriguez's SEVIS record was that she was "identified in [a] criminal records check and/or has had [her] visa revoked." Am. Compl., Doc. No. 15 at ¶¶ 8, 31; Parra Rodriguez Aff., Doc. No. 25 ¶ 12.

---

[2] Those provisions refer to certain situations in which the Attorney General may waive the application for the "[t]emporary admission of nonimmigrants." 8 U.S.C. § 1182(d); Visas: Waiver for Ineligible Nonimmigrants, 84 Fed. Reg. 19712 (May 6, 2019) (to be codified at 22 C.F.R. pt. 40) ("Section 212(d)(3)(A)(i) of the INA, 8 U.S.C. § 1182(d)(3)(A)(i), authorizes the Department of Homeland Security to approve a waiver covering most grounds in section 212(a) of the INA, if the Secretary of State or a consular officer recommends that the alien be admitted temporarily into the United States, despite the inadmissibility.").

[3] Defendants cite 8 U.S.C. § 1201(i) for the proposition that it provides reasons for terminating nonimmigrant status. Doc. No. 26 at 17. However, section 1201(i) concerns revoking visas and other entry documents. As explained above, and as Defendants concede, visa revocation is entirely separate from F-1 status and SEVIS record termination.

10

The pertinent regulations and statutes do not permit Defendants to lawfully terminate Parra Rodriguez's SEVIS record.  There are no facts demonstrating Parra Rodriguez has failed to maintain her F-1 visa status:  she maintains a full course of study, works only in authorized employment positions, and has no criminal convictions.  Parra Rodriguez does not have a criminal conviction preventing her from "maintaining her status," and there are no other applicable grounds for terminating her SEVIS record.  8 C.F.R. § 214.1(d) (delineating the reasons for which a student's F-1 status may be revoked).  Her present F-1 status was determined and her F-1 visa granted in July 2023, well after the 2019 criminal charge was dropped, she was pronounced not guilty, and the State Department was notified of her criminal case disposition.  Am. Compl., Doc. No. 15 at ¶¶ 2-4, 23-25; Parra Rodriguez Aff., Doc. No. 25 ¶¶ 6-8.  Further, F-1 visa revocation is not grounds for SEVIS record termination.  Ex. A, Student and Exchange Visitor Program – Policy Branch, U.S. Immigr. & Customs Enf't, U.S. Dep't of Homeland Sec., SEVP Policy Guidance 1004-04 – Visa Revocations 3 (June 7, 2010), https://perma.cc/ZM2S-R6Z6 (last visited May 1, 2025).

Defendants argue that the Privacy Act precludes this court's review of Parra Rodriguez's APA claim because the Privacy Act triggers the sovereign immunity waiver exception in section 702 of the APA.  Doc. No. 26 at 2, 10-15.  *See* 5 U.S.C. § 702 ("Nothing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.").  Parra Rodriguez does not assert a Privacy Act violation; in fact, she *cannot* sue under the Privacy Act because she is a nonimmigrant student.[4]  5 U.S.C. § 552a ("[T]he term 'individual' means a citizen of the United States or an alien lawfully admitted

---

[4] Parra Rodriguez does include a prayer for relief under The Privacy Act in her amended complaint.  Am. Compl., Doc. No. 15 at 17.  That prayer is ineffectual because she does not allege Defendants violated the Privacy Act.  *Id.* at 14-16.

for permanent residence . . . .").  Further, she does not seek to amend her SEVIS record, but

rather for Defendants to fully reinstate it with no gaps in status resulting from Defendants'

unlawful termination of it.  *F.A.A. v. Cooper*, 566 U.S. 284, 310 n.4 (2012) ("[I]njunctive relief

is available under the [Privacy] Act only for a limited category of suits: suits to amend a record

and suits for access to a record."); *Reinbold v. Evers*, 187 F.3d 348, 361 (4th Cir. 1999) ("[T]he

Privacy Act does not allow a court to alter records that accurately reflect an administrative

decision, or the opinions behind that administrative decision."); *Bishop v. Off. of Pers. Mgmt.*,

514 F. App'x 104, 105 (3d Cir. 2013) (affirming dismissal of a complaint because the plaintiff

sought to "relitigate the merits of his termination" rather than correct personnel records).  Parra

Rodriguez's requested relief is a substantive challenge to Defendants' decision to terminate her

record rather than merely correcting the accuracy of that record.

> The Privacy Act permits a person to contest the accuracy of administrative
> records. It supposes that there is a distinction between "records" and "decisions."
> So if, for example, the Civil Aeronautics Board revoked a pilot's license after
> finding that he had performed a barrel roll 500 feet over the stands of Soldier
> Field in Chicago, the (ex) pilot could use the Privacy Act to ensure that the record
> said that the offending maneuver took place at a height of 500 feet rather than,
> say, 50 feet (which would have posed much greater risk to the audience). He
> could not use the Privacy Act to contest the decision that he did indeed perform a
> low-level stunt—for the document recording that decision would be a wholly
> accurate rendition of what the CAB concluded. If an agency errs, the right
> response is not to rewrite history, changing the record in Orwellian fashion to
> pretend that it reached some other conclusion. **The right response to error is to
> correct the disposition under the Administrative Procedure Act.**

*Douglas v. Agric. Stabilization & Conservation Serv.*, 33 F.3d 784, 785 (7th Cir. 1994)

(emphasis added).  "[T]he Privacy Act does not permit a court to alter documents that accurately

reflect an administrative action, no matter how contestable the conclusion may be."  *Id.*

Defendants' position that the Privacy Act precludes Parra Rodriguez from challenging

their actions under the APA is unsupported by caselaw and the Privacy Act itself.  The Supreme

Court recently held that the Privacy Act and other laws "can coexist harmoniously" and that

parties face a "heavy burden" in showing one statute "displaces" a second. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 63 (2024); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510 (2018) ("A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow.") (internal citation and quotation marks omitted). In *Doe v. Chao*, the Supreme Court noted how "[t]he Privacy Act says nothing about standards of proof governing equitable relief," and opined that "this inattention is explained by the general provisions for equitable relief within the Administrative Procedure Act (APA), 5 U.S.C. § 706." 540 U.S. 614, 619 n.1 (2004). The Supreme Court's reference to the Privacy Act incorporating the APA's equitable relief standard of proof supports the inference that the two statutes "coexist harmoniously" rather than conflict. *Id.*; *Kirtz*, 601 U.S. at 63. Additionally, district courts have held that, in certain situations, plaintiffs must seek judicial review under the APA before seeking relief under the Privacy Act. *See White v. U.S. Civ. Serv. Comm'n*, 589 F.2d 713, 715 (D.C. Cir. 1978) (holding an amendment action under the Privacy Act was "inappropriate and premature" because plaintiff had not yet sought judicial review under the APA.). *See also All. for Retired Americans v. Bessent*, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025) ("[T]he availability of a Privacy Act suit for damages does not take this case outside the scope of the waiver of sovereign immunity in § 702 of the APA and does not affect this Court's subject-matter jurisdiction over Plaintiffs' APA claims."). The Privacy Act does not trigger the sovereign immunity waiver exception in the APA because Defendants have not met the "heavy burden" of showing that the Privacy Act displaces the APA. *Kirtz*, 601 U.S. at 63.

Defendants also contend that "APA review is unavailable here because there is no final agency action before the Court." Doc. No. 26 at 2, 15-17. Under the APA, "an appeal to

13

'superior agency authority' is a prerequisite to judicial review *only* when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." *Darby v. Cisneros*, 509 U.S. 137, 154 (1993) (quoting 5 U.S.C. § 704). There is no statute or agency regulation requiring appeal of a SEVIS record termination before review and Defendants' termination of a SEVIS record is not "made inoperative pending that review." *Id. See also Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 (3d Cir. 2019) ("The order terminating the students' F-1 visa status was therefore a final order for jurisdictional purposes because there was no further opportunity for review."); *Doe v. Noem*, 2025 WL 1161386, at *6 n.5 (W.D. Va. Apr. 21, 2025) (holding the termination of SEVIS record is final agency action which a court has jurisdiction to review). The same reasoning applied in *Jie Fang* applies here: (1) "there is no statutory or regulatory requirement that a student seek reinstatement" of their SEVIS record; (2) "there is no mechanism to review the propriety of the original [SEVIS] termination order[;]" and (3) "uninitiated removal proceedings cannot be a prerequisite to finality when there is no guarantee that such proceedings will ever occur." *Jie Fang*, 935 F.3d at 182-84.

Contrary to Defendants' argument, legal consequences *do* flow from SEVIS record termination. When a SEVIS record is terminated: (1) a student loses all on- and off-campus employment authorization; (2) the student cannot re-enter the United States; and (3) ICE agents may investigate the student to confirm their departure. U.S. Dep't of Homeland Sec., *Terminate a Student – Effects of Termination* (Nov. 7, 2024), https://perma.cc/2NZT-9EH5 (last visited May 1, 2025); Doc. No. 26 at 16.

Defendants' SEVIS record termination is "final agency action for which there is no other adequate remedy in a court [and is] subject to judicial review." 5 U.S.C. § 704. *See also Du v.*

*United States Dep't of Homeland Sec.*, 2025 WL 1220254, at *5 (D. Conn. Apr. 28, 2025) (holding defendants' termination of plaintiffs' SEVIS record was final agency action).

For the foregoing reasons, I conclude that Parra Rodriguez has demonstrated a clear and substantial likelihood of success on the merits of her claim that her SEVIS termination was arbitrary, capricious, and unlawful under the APA. Because Parra Rodriguez maintained her status at all relevant times, Defendants terminated her SEVIS record without statutory and regulatory authority and failed to provide an explanation for why they terminated her SEVIS record.

B. Whether Parra Rodriguez will experience irreparable harm absent injunctive relief

"Irreparable harm exists where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Lazor v. Univ. of Connecticut*, 560 F. Supp. 3d 674, 678 (D. Conn. 2021) (quoting *United States SEC v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014)) (internal quotation marks omitted).

Defendants argue "the Supreme Court has held that the possibility of detention and deportation 'cannot constitute the requisite irreparable injury' necessary for preliminary injunctive relief."[5] Doc. No. 26 at 3 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Parra Rodriguez does not rely solely on her potential removal to prove she will suffer irreparable harm—Parra Rodriguez demonstrates "[t]here is an actual and imminent risk that she will be forced to disenroll from her studies, leave the country immediately, and abandon her Ph[.]D." Doc. No. 4-1 at 14. *See also* Parra Rodriguez Aff., Doc. No. 25 ¶ 14. Parra Rodriguez

---

[5] Defendants both misquote and misstate the Supreme Court's holding in *Nken v. Holder*, 556 U.S. 418 (2009), which does not address detention. *Id.* at 435 ("[T]he burden of removal *alone* cannot constitute the requisite irreparable injury.") (emphasis added).

establishes that, if she stays and "accumulate[s] unlawful presence, it is likely that she will be precluded from obtaining an F-1 visa to continue her studies in the future." *Id.* Additionally, she risks being "subjected to detention, removal proceedings, and deportation." *Id.* Finally, she continues to "suffer substantial emotional and psychological distress" due to Defendants' actions. *Id.*

The myriad of cases around the United States involving international students being detained and facing removal proceedings proves there is nothing speculative or hypothetical about the irreparable harm Parra Rodriguez is experiencing and may continue to experience. *See Ozturk v. Trump*, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) (ordering ICE to transfer a Tufts University student detained in ICE custody back to the District of Vermont); *Khalil v. Joyce*, 2025 WL 849803, at *3-4 (S.D.N.Y. Mar. 19, 2025) (describing how a Columbia University student was detained by ICE and moved from New York to New Jersey to Louisiana). *See also* Ashley Mowreader, *International Student Visas Revoked*, Inside Higher Ed., https://perma.cc/N9PM-SSUH (last visited May 1, 2025).

Dozens of courts have held termination of a student's SEVIS record under similar or identical circumstances to Parra Rodriguez's constitutes irreparable harm and granted preliminary relief based on that finding. *See Doe v. Noem*, 2025 WL 1161386, at *6-7 (W.D. Va. Apr. 21, 2025) (finding irreparable harm where a student's SEVIS record was terminated and entering a TRO); *Ajugwe v. Noem*, 2025 WL 1148689, at *3-4 (M.D. Fla. Apr. 18, 2025) (same); *Isserdasani v. Noem*, 2025 WL 1118626, at *5-6 (W.D. Wis. Apr. 15, 2025) (same); *Roe v. Noem*, 2025 WL 1114694, at *3-5 (D. Mont. Apr. 15, 2025) (same); *Doe v. Noem*, 2025 WL 1134977, at *8-9 (E.D. Cal. Apr. 17, 2025) (same); *Oruganti v. Noem*, 2025 WL 1144560, at *3-8 (S.D. Ohio Apr. 18, 2025) (same); *Ratsantiboon v. Noem*, 2025 WL 1118645, at *2-3 (D.

16

Minn. Apr. 15, 2025) (same); *Patel v. Bondi*, 2025 WL 1134875, at *2-3 (W.D. Pa. Apr. 17, 2025) (same); *Chen v. Noem*, 2025 WL 1163653, at *10-13 (S.D. Ind. Apr. 21, 2025) (same); *Daou v. Noem*, 2025 WL 1148687, at *3-4 (M.D. Fla. Apr. 18, 2025) (same).

    1.  *SEVIS record reinstatements and new ICE policy*

On April 25, 2025, Defendant ICE represented that it is changing course in cases where it has recently terminated nonimmigrant students' SEVIS records. *See generally Doe v. Trump et al.*, Dkt. No. 4:25-cv-03140-JSW, Doc. No. 47 (Attached as Exhibit B to this Order.). Defendants asserted they were "developing a policy that will provide a framework for SEVIS record terminations." *Id.* at 4. "Until such a policy is issued, the SEVIS records for the plaintiffs in these above-captioned cases (and other similarly situated plaintiffs) will remain Active or shall be re-activated if not currently active." *Id.* ICE stated that the "SEVIS records will remain active until ICE's new policy is implemented." *Id.*

On April 30, 2025, it became publicly available that ICE internally circulated a broadcast message entitled "SEVIS Notice – Policy Regarding Termination of Records" on April 26, 2025. *Patel v. Lyons*, Dkt. No. 1:25-cv-1096, Doc. No. 16-1 at 2 ("April 29 SEVIS Notice") (Attached as Exhibit C to this Order.). Specifically, the policy states that "[a] terminated record in SEVIS could indicate that the nonimmigrant no longer maintains F . . . status." Ex. C, April 29 SEVIS Notice at 2. The new policy does not contain a process for notice and opportunity to respond prior to termination of SEVIS records by ICE. *Id.* The policy does explicitly list the reasons for which SEVP, administered by Defendant ICE, can terminate SEVIS records. *Id.* (listing exceeded unemployment time, failure to comply with I-515A, failure to repay the I-901 fee chargeback, failure to report while on OPT, no show, school withdrawn, violation of change of

status requirements, change of status approved, evidence of a failure to comply with the terms of nonimmigrant status exists, and U.S. Department of State visa revocation).

The parties agree that Defendants reinstated Parra Rodriguez's SEVIS record.  That fact does not moot this action.  "A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000).  "Such abandonment is an important factor bearing on . . . whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968).

Defendants' voluntary reinstatement of Parra Rodriguez's SEVIS record does not show her SEVIS record termination cannot "reasonably be expected to recur." *Id.*  Although ICE reinstated Parra Rodriguez's SEVIS record, Defendants' actions have left her without a visa and with a gap in her SEVIS record. Further, ICE implemented a new policy that would allow Defendants to terminate her SEVIS record *again* without her formal notice and the opportunity to be heard.  Without injunctive relief, Parra Rodriguez is once again at risk of losing her ability to complete her Ph.D. program, detention, and removal due to a potentially arbitrary, capricious, and unlawful decision by Defendants.

Defendants claim, without any legal citation, that "[t]erminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States." Watson Decl., Doc. 27 ¶ 10; Doc. No. 26 at 6, 16.  "Such a statement, standing alone, cannot suffice to satisfy the heavy

burden of persuasion which we have held rests upon those in [Defendants'] shoes." *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203. Further, that proposition runs counter to what Defendants argue is the purpose of SEVP and SEVIS records: to "manage[] and track[] nonimmigrants in the F . . . categor[y]" and to "closely monitor foreign students . . . by vigorously enforcing statutory and regulatory requirements." Watson Decl., Doc. 27 ¶ 3.

Defendants' assertion that terminating a SEVIS record does not affect a nonimmigrant's legal status rings hollow when considering the practical implications of a SEVIS record termination and Defendants' own policy. Effectively, SEVIS records are how Defendants monitor a nonimmigrant student's legal status—therefore, a termination of a SEVIS record, as viewed by SEVP, is a termination in lawful status. *See* 9 FAM 402.5-4(B) ("[T]he SEVIS record is the *definitive record of student* or exchange visitor *status and visa eligibility*.") (emphasis added). "When SEVP has objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason, then the SEVIS record may be terminated on that basis." Ex. C, April 29 SEVIS Notice at 3. Once a SEVIS record is terminated, ICE has the discretion to investigate and "initiate removal proceedings pursuant to INA § 237(a)(1)(C)(i) based on evidence that a nonimmigrant student is not complying with the terms of their nonimmigrant status." *Id.* When Parra Rodriguez's SEVIS record was terminated and her visa revoked, Defendants could have, based on their own "definitive records," detained and deported her. *See* 9 FAM 402.5-4(B). Practically, ICE's April 26 policy directly contradicts Defendants' claim that their termination of a SEVIS record does not affect a students' legal status because a SEVIS record termination can lead directly to removal. Ex. C, April 29 SEVIS Notice at 3.

ICE's new policy still allows Defendants' to unilaterally terminate her SEVIS record due to the revocation of her F-1 visa. *Id.* ("If [the U.S. State Department] revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B)."). Until she applies and is approved for a new visa, which may take up to 180 days, Defendants may terminate her SEVIS record at any time. 8 U.S.C § 1571(b) (stating an immigration benefit application should be processed no later than 180 days after its filing). If Defendants terminate her SEVIS record again, she will be ineligible for a visa and susceptible to removal proceedings. 9 FAM 402.5-4(B) ("You should issue [F-1 visas] only to visa applicants whose SEVIS record indicates a SEVIS status of 'initial' or 'active.'"); Ex. C, April 29 SEVIS Notice at 3 ("When [the U.S. State Department] revokes a [nonimmigrant student's] visa with immediate effect, ICE *should* take steps to initial removal proceedings.") (emphasis added). Further, Parra Rodriguez's SEVIS record is still tarnished by a 17-day gap in her lawful status.[6]

Parra Rodriguez successfully alleges injuries "that [are] neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (quoting *Forest City Daly Hous., Inc. v. Town of N. Hempstead*, 175 F.3d 144, 153 (2d Cir. 1999). She now has a 17-day gap in her SEVIS record due to Defendants' termination of her SEVIS record and her visa remains revoked. I therefore conclude Parra Rodriguez would face irreparable harm absent

---

[6] One immigration benefit to which Parra Rodriguez is no longer entitled due to that 17-day gap is a program extension granted by Yale's DSO. 8 C.F.R. § 214.2 ("An F–1 student who is unable to meet the program completion date on the Form I–20 or successor form may be granted an extension by the DSO if the DSO certifies that the student has *continually maintained status* and that the delays are caused by compelling academic or medical reasons, such as changes of major or research topics, unexpected research problems, or documented illnesses.") (emphasis added).

injunctive relief, despite reinstatement of her SEVIS record. *See Du v. United States Dep't of Homeland Sec.*, 2025 WL 1220254, at *5 (D. Conn. Apr. 28, 2025) (finding irreparable harm and granting plaintiff students' motion for a TRO despite recent reinstatement of SEVIS records); *Doe No. 1 v. Noem*, 2025 WL 1224783, at *5-7 (E.D. Pa. Apr. 28, 2025) (same).

C.  Whether the balance of equities tips in Parra Rodriguez's favor and whether an injunction is in the public interest

"Where, as here, the government is a party to the suit, the final two [preliminary injunction] factors merge." *New York v. United States Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020).  Parra Rodriguez has also demonstrated that the balance of the hardships tip in her favor and that the public interest would not be disserved by issuing a preliminary injunction.

Defendants claim their interest in "enforce[ing] the provisions of the Immigration and Nationality Act [("INA")] relating to the Department's ability to update and maintain the information in SEVIS" will be "infringed" if I grant Parra Rodriguez preliminary relief.  Doc. No. 26 at 25.  However, Parra Rodriguez's SEVIS record was not lawfully terminated pursuant to the INA or relevant regulations.  Therefore, restoring her SEVIS record to the status it was before Defendants terminated it on April 9, without any gaps in active status, will not infringe on Defendants' interest.  Further, granting Parra Rodriguez the relief she requests will do nothing to prevent Defendants from continuing to "develop and administer" SEVP.  *Id.* at 24. Conversely, refusing to enjoin Defendants would result in Parra Rodriguez losing the integrity of her SEVIS record which could result in harming her chances in successfully reapplying for a visa and obtaining other future immigration benefits.

Additionally, there is substantial public interest in ensuring government agencies abide by federal laws and regulations.  *See New York v. Trump*, 490 F. Supp. 3d 736, 747

(S.D.N.Y. 2020); *Islam v. Cuomo*, 475 F. Supp. 3d 144, 160 (E.D.N.Y. 2020). "[T]here is generally no public interest in the perpetuation of unlawful agency action. . . . To the contrary, there is substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (internal citations and quotation marks omitted); *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018).

Parra Rodriguez has no criminal convictions. She poses no threat to the community to which she has belonged for almost two years. In fact, enjoining Defendants, and thereby upholding the rule of law, will affirmatively serve the public interest.

## V.     Requested Relief

A prohibitory preliminary injunction seeks to "maintain the status quo," whereas a mandatory injunction "modif[ies] the status quo." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020); *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. . . . A mandatory injunction, in contrast, is said to alter the status quo . . . ."). The "status quo" is "defined as 'the last peaceable uncontested status preceding the present controversy.'" *JLM Couture, Inc. v. Gutman*, 91 F.4th 91, 105 (2d Cir. 2024) (citing *Mastrio v. Sebelius*, 768 F.3d 116, 121 (2d Cir. 2014)).

I agree with Parra Rodriguez that her requested relief maintains the status quo because it restores her SEVIS record and F-1 status to "the last peaceable uncontested status preceding the present controversy." *JLM Couture, Inc. v. Gutman*, 91 F.4th at 105. *See* Doc. No. 4-1 at 10.

Thus, I construe Parra Rodriguez's requested relief as a prohibitory preliminary injunction, rather than a mandatory preliminary injunction.

However, Parra Rodriguez also meets the heightened standard of review for a mandatory preliminary injunction if I consider her requested relief as "alter[ing] the status quo." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011). As described above, Parra Rodriguez has demonstrated a clear and substantial likelihood of success on the merits. *See Doninger v. Niehoff*, 527 F.3d 41, 47-48 (2d Cir. 2008).

In her motion for a TRO, preliminary injunction, or stay, Parra Rodriguez requests the following relief: (1) An order requiring Defendants to restore Para Rodriguez's SEVIS record to prevent ongoing harm to her and set aside their termination decision, pending resolution of this litigation; (2) An injunction preventing Defendants from taking adverse immigration action against Parra Rodriguez as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings against her or detaining her pursuant to her immigration status; and (3) An injunction preventing Defendants from unlawfully terminating Parra Rodriguez's F-1 student status under the SEVIS system. Doc. No. 4 at 1; Doc. No. 4-1 at 6. One of Parra Rodriguez's requests is moot: her SEVIS record is restored. However, her SEVIS record contains a 17-day gap that was not present before Defendants terminated her SEVIS record on April 9. Parra Rodriguez is also still at risk of having her SEVIS record terminated again and being subject to removal proceedings because her visa was revoked.

Defendants argue that I lack authority to grant Parra Rodriguez's requested relief because "[t]he INA divests this Court of jurisdiction over discretionary decisions concerning DHS's decision to initiate removal proceedings." Doc. No. 26 at 20; 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the

decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.").  The Second Circuit holds that whether the district court has jurisdiction in a suit brought against immigration authorities turns on the substance of the relief a plaintiff seeks and whether a plaintiff seeks review of a discretionary decision by the Attorney General.  *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011); *Liu v. I.N.S.*, 293 F.3d 36, 41 (2d Cir. 2002) (citing *Chmakov v. Blackman*, 266 F.3d 210, 215 (3d Cir. 2001) ("[Section 1252(g)] limits the power of federal courts to review the discretionary decisions of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders.")).  *See also Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999) (reading section 1252(g) narrowly and stating it applies to only a limited subset of deportation claims).

Parra Rodriguez does not seek relief related to ongoing removal proceedings and is not challenging the Attorney General's discretionary authority; she seeks review of Defendants' unlawful decision to terminate her SEVIS record and the subsequent consequences stemming from this termination.  Courts have held similar challenges to not fall under section 1252(g)'s purview.  *See Ozturk v. Trump,* 2025 WL 1145250, *10, 14-15 (D. Vt. Apr. 18, 2025) (holding that 8 U.S.C. § 1252(g) does not limit the court's review where plaintiff raised constitutional and legal challenges to her detention that are separate from removal proceedings); *Doe v. Noem*, 2025 WL 1134977, at *7 (E.D. Cal. Apr. 17, 2025) ("[H]ere, plaintiff seeks a temporary stay preventing removal, which is permitted under 8 U.S.C. § 1252(g) where the basis for the stay is distinct from how the government's prosecutorial discretion was deployed."); *Chen v. Noem*, 2025 WL 1163653, at *10 (S.D. Ind. Apr. 21, 2025)  ("The Court concludes, at least at this stage, that it may enjoin Defendants from imposing any consequences, including detention and

removal, of the termination of Chen's SEVIS record and F-1 status.") (collecting cases where similar injunctive relief ordered).

Therefore, I enjoy jurisdiction to order her requested relief and to enjoin Defendants because Parra Rodriguez's request for relief does not "aris[e] from [a] decision or action by the Attorney General" to commence proceedings, adjudicate cases, or execute removal orders under the INA.

## VI.    Security

The Second Circuit "reject[s] the argument that a bond is always required when a preliminary injunction is granted." *Colgan Financial Group, Inc. v. First 100, LLC*, 2014 WL 12748082, at *1 (D. Conn., 2014) (citing *Ferguson v. Tabah*, 288 F. 2d 665, 675 (2d Cir. 1961)). A district court has "wide discretion" to waive bond "where there [is] no proof of likelihood of harm." *Ferguson*, 288 F. 2d at 675.  Some courts will also consider "the strength of a movant's case in analyzing the likelihood of harm to a potentially wrongfully enjoined nonmovant." *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 203 (E.D.N.Y. 2013)); *Doctor's Assocs. LLC v. Hai*, 2019 WL 2385597, at *5 (E.D.N.Y. June 6, 2019).  *See also New York City Triathlon, LLC v. NYC Triathlon Club*, Inc., 704 F. Supp. 2d 305, 345 (S.D.N.Y. 2010) ("Defendant has not demonstrated it will likely suffer any harm absent the posting of a bond, and the likelihood of success on the merits is overwhelming.").

I exercise my discretion to waive the bond requirement set forth in Rule 65(c) of the Federal Rules of Civil Procedure at this time because Parra Rodriguez brings strong claims against Defendants and the likelihood of harm to Defendants is almost nonexistent.

## VII.    Conclusion

For the foregoing reasons, Parra Rodriguez's motion for a preliminary injunction is **granted**.  Doc. No. 4.  Accordingly, **it is ORDERED** that the Defendants, their officers, agents, servants, employees, and attorneys, as well as all persons in active concert or participation with them:

(1) Shall restore Parra Rodriguez's SEVIS record and set aside their termination decision so there are no gaps in her SEVIS record;

(2) Are enjoined from terminating Parra Rodriguez's SEVIS record; and

(3) Are enjoined from taking adverse immigration action against Parra Rodriguez as retaliation for the present litigation, such as issuing a Notice to Appear in Removal Proceedings against Parra Rodriguez or detaining her pursuant to her immigration status

until final judgment is entered in this case.

So ordered.

Dated at Bridgeport, Connecticut, this 1st day of May 2025.

<u>/s/ STEFAN R. UNDERHILL</u>
Stefan R. Underhill
United States District Judge