UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN DOE,<br><br>                      Plaintiff,<br><br>    v.<br><br>KRISTI NOEM et al.,<br><br>                      Defendant. | CASE NO. 2:25-cv-00633-DGE<br><br>ORDER DENYING PRELIMINARY INJUNCTION (DKT. NO. 20) |

## I    INTRODUCTION

Before the Court is Plaintiff's Motion for a Preliminary Injunction ("PI") (Dkt. No. 20.) This case concerns a mass-termination of international F-1 visa student status records in the Student and Exchange Visitor Information System ("SEVIS"). On April 17, 2025, this Court entered a Temporary Restraining Order ("TRO") requiring Defendants to restore Plaintiff Doe's SEVIS record, as did numerous courts around the nation. *See Doe v. Noem*, No. 2:25-CV-00633-DGE, --- F.Supp.3d ---, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025). The TRO was extended on May 1, 2025 and will expire on May 15, 2025. (Dkt. No. 31.)

The facts underlying this case have changed substantially since the TRO was entered and since Plaintiff filed his motion for a PI on April 23, 2025. Though discussed more fully *infra*, the critical development is that on May 8, 2025 Defendants filed a declaration in which an Immigration and Customs Enforcement ("ICE") official attested under oath that ICE "has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the [National Crime Information Center] record that led to its initial termination" and that "ICE's reactivation of the plaintiff(s) SEVIS record is being made retroactive to the date of its initial termination such that there is no gap in the plaintiff(s)' SEVIS record." (Dkt. No. 43-1 at 3.) Notwithstanding that declaration, Plaintiff reaffirmed that he is still seeking a PI. (Dkt. No. 46.)

This is a unique case. Plaintiff has established not only a "likelihood" of success on the merits, but has made an *overwhelming* showing on the merits of his Administrative Procedures Act (APA) claim, as recognized in the Court's TRO order. Nonetheless, to establish entitlement to the extraordinary remedy of a PI, a plaintiff must satisfy all the *Winter* factors, including a likelihood of irreparable harm should a PI not be granted. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Because the Court concludes that Plaintiff does not have any current likelihood of irreparable harm, and there is no present need for a PI to preserve the status quo until this litigation can reach a final judgment on the merits, an injunction cannot issue.

The Court emphasizes that nothing in this Order goes to the merits of Plaintiff's underlying case, nor does it reverse or undermine the Court's determination that irreparable harm existed at the time the TRO issued. Likewise, though Defendants argued in their PI response that the motion was moot (Dkt. No. 26), and Plaintiff replied that voluntary cessation doctrine applies (Dkt. No. 28), the Court only holds in this Order that there is no present irreparable harm to

satisfy *Winter* and does not reach mootness. Any question as to the mootness of the underlying litigation will be left to subsequent motions practice.

## II  BACKGROUND

The Court assumes familiarity with the facts of the F-1 visa program and SEVIS system, and termination of Plaintiff's record in that system, as discussed in the TRO Order. *Doe*, 2025 WL 1141279 at *1–*2. The Court held that Plaintiff established a likelihood of success on his APA claim, because Defendants had terminated Plaintiff's SEVIS record for a reason that was impermissible under their own regulations, and because Defendants had offered no reasoned explanation for that decision. *Id.* at *4–*7. The Court held that at that time, when Plaintiff's SEVIS record was terminated, Plaintiff faced irreparable harms including: loss of employment authorization and ability to support himself, loss of opportunity to complete his degree program, fear of removal that went above the ordinary and was compounded by the other harms, and the possibility of accruing unlawful presence. *Id.* at *7–*8. As to the remaining equitable relief factors (which merge in the case of a government defendant), the Court held that the public interest supports enforcement of valid regulations. *Id.* at *9. As a result, the Court ordered that Defendants "shall restore Plaintiff's F-1 student record and I-20" in SEVIS, set aside the April 7, 2025 termination of his record, not terminate his record again "absent a valid ground as set forth in 8 C.F.R. §§ 214.1(d)–(g); 214.2(f)," and not detain, remove from this Court's jurisdiction, or initiate removal proceedings against Plaintiff on the basis of the April 7, 2025 termination of his SEVIS record. *Id.* at *10. The Court subsequently extended the 14-day TRO to May 15, 2025 to allow for consideration of this PI motion. (*See* Dkt. No. 31.)

After the Court's TRO order, facts on the ground began to change. On or about April 25, 2025, there were news reports concerning the Administration's intent to restore SEVIS records.[1] On April 30, 2025, Defendants in this matter filed a declaration including a "Broadcast Message" sent out to users on the SEVIS system. (*See* Dkt. No. 29-1.) The Broadcast Message makes legal and factual claims that this Court and others have rejected, such as that 8 U.S.C. § 1372 gives ICE the authority to terminate SEVIS records (*but see Doe*, 2025 WL 1141279 at *6, explaining why that argument fails), and that "termination does not always result in an adverse impact on the student" (*but see id.* at *7, citing the negative consequences of SEVIS termination listed on *ICE's own website*) (Dkt. No. 29-1 at 2). The Broadcast Message further suggests that the Student Exchange and Visitor Program (SEVP) may terminate SEVIS records following a revocation of a student's visa, citing no authority for that proposition. (*See id.* at 3.) Rather, this Court has explained that "the revocation of Plaintiff's F-1 visa does not serve as a ground for the SEVIS termination." *Doe 1 v. Noem*, No. 2:25-CV-00663, 2025 WL 1208277, at *6 (W.D. Wash. Apr. 25, 2025). The Court held a PI hearing on May 1, 2025, during which Defendants did not provide any substantive answers to the Court's questions about the Broadcast Message, and the Court questioned Plaintiff as to irreparable harm. (*See generally* Dkt. No. 41) (transcript of hearing).

Following the hearing, at the Court's direction, Plaintiff filed a supplemental memorandum and declaration as to irreparable harm, and Defendants filed a reply. In those filings, Plaintiff asserts that he continues to face irreparable harms related to his academics and

---

[1] *See* Kyle Cheney and Josh Gerstein, *Trump Administration Reverses Abrupt Terminations of Foreign Students' US Visa Registrations*, Politico (April 25, 2025), https://www.politico.com/news/2025/04/25/trump-admin-reverses-termination-foreign-student-visa-registrations-00309407.

research, career and immigration trajectory, financial and institutional impacts, health and family, and "Regulatory Limbo & Detention Risk." (Dkt. No. 32 at 2.) In a declaration, Plaintiff states that when his SEVIS record was terminated, "my employment was immediately terminated and I was no longer able to access any of the research, equipment or other materials needed for my projects. As a result, I was immediately unable to continue work on my dissertation and thesis." (Dkt. No. 33 at 2.) He suffered acute abdominal pain, requiring medical care. (*Id.*)[2] After the termination, he worked with his advisors to "fast track" his program, allowing him to receive his degree on June 13, 2025, but he will miss that date if his status is terminated again. (*Id.* at 3.) Plaintiff states that he has three research manuscripts in "late stage revision and under review at journals," but if his record is terminated again, he will be unable to finish them, severely impacting his career. (*Id.*) He was accepted to present an abstract at a conference on May 14, 2025 in the United States, but will not attend without assurance he will not face adverse immigration actions while traveling. (*Id.* at 3–4.) Plaintiff is managing a software upgrade in his lab, which will not be timely completed if his record is terminated again. (*Id.* at 4.) He received a job offer for Optional Practical Training (OPT) at Meta, but "I have been warned that any additional SEVIS termination will cause the company to withdraw its offer, because it cannot employ someone lacking work authorization or who is unable to guarantee their daily availability." (*Id.*) His research stipend is his sole source of income. (*Id.* at 5.) And Plaintiff is planning a family with his fiancée, a lawful permanent resident, but they are experiencing fertility problems and "[d]ue to the risk of another SEVIS termination, we are having to change our fertility plans and are discussing long-term options that include

---

[2] Plaintiff subsequently indicated he was diagnosed with appendicitis and underwent emergency surgery. (Dkt. No. 37 at 1.)

ORDER DENYING PRELIMINARY INJUNCTION (DKT. NO. 20) - 5

reproductive storage so that we may try to have a child later." (*Id.*) Plaintiff also entered a declaration from Shelly Sakiyama-Elbert, the Vice Dean for Research and Graduate Education for the School of Medicine at the University of Washington, who supports Doe's claim that he will not be able to finish his manuscripts, attend conferences, complete research, and oversee software upgrades if his SEVIS is terminated again. (Dkt. No. 34.) Plaintiff further provided supplemental authorities. (Dkt. No. 37.)

Defendants filed a reply to Plaintiff's supplemental filings, in which they assert that "Plaintiff's alleged harms are purely speculative because his SEVIS record is currently active, and he therefore cannot satisfy the irreparable harm standard necessary for a preliminary injunction." (Dkt. No. 40 at 1–2) (citing *Goldie's Bookstore, Inc. v. Superior Court of State of California*, 739 F.2d 466, 472 (9th Cir. 1984)). Defendants argue that the harms Plaintiff listed would only occur if his SEVIS is terminated again, but he faces "no *current* restriction on his access to academic resources" and no current harm as to the other issues described. (*Id.* at 2–3.)

Following this additional briefing, on May 8, 2025, Defendants filed the declaration from Andre Watson, a "Senior Official within the National Security Division (NSD) for Homeland Security Investigations (HSI)." (Dkt. No. 43-1.) Watson confirms that the mass-termination of SEVIS records that began in March 2025 was "due to information provided by U.S. Department of State and criminal databases." (*Id.* at 3.) He states that "ICE has re-activated SEVIS records for plaintiff(s)" whose records were canceled on that basis. (*Id.*) As to ICE's future intentions, Watson states "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination." (*Id.*) And as to concerns about the impact of a "gap" in students records caused by ICE's prior termination, Watson states, "ICE's reactivation of the plaintiff(s) SEVIS record is being made retroactive to

the date of its initial termination such that there is no gap in the plaintiff(s)' SEVIS record." (*Id.*) Likewise, for students in OPT whose end-date of employment authorization was previously changed, "the record has been reset to the end date set forth in the alien's SEVIS record before its termination." (*Id.*)

In light of the declaration, the Court asked the Parties to provide a Joint Status Report explaining if Plaintiff still sought preliminary injunctive relief.[3] (Dkt. No. 42.) Plaintiff represented that he still seeks a PI, because the Broadcast Message indicated a risk of renewed revocation and removal premised on visa revocation, and because of concerns about the effect of the status-gap on Plaintiff's OPT. (Dkt. No. 46 at 1–2.) Defendants reiterated their view that Plaintiff's "preliminary injunction motion is moot," and that to the extent Plaintiff sought relief based on visa status, that fell outside the scope of his complaint and PI motion. (*Id.* at 2.)

### III    DISCUSSION

**A.  Legal Standard for Injunctive Relief**

Federal Rule of Civil Procedure 65(a) governs the issuance of a PI.  To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public

---

[3] In a closely related case, the parties entered into a stipulated agreement after the same declaration was entered, stating:

> Based on the Declaration of Andre Watson filed by the government as a supplemental exhibit and the government's agreement that ERO Seattle and HSI Seattle will not arrest, detain, or issue an NTA based on the prudential revocation of visas for Student Does 1, 2, and 4 for the duration of the litigation, the parties agree that a preliminary injunction is not necessary at this time.

*Doe 1 et al. v. Noem et al.*, 2:25-cv-00663-DGE, Docket No. 35.  No stipulated agreement was reached in this case.

interest. *Winter*, 555 U.S. at 20. Generally, a PI is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006). "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009).

The Ninth Circuit has also articulated an alternative "sliding scale" approach pursuant to which the first and third *Winter* factors are analyzed on a continuum; under such standard, a weaker showing on the merits, combined with a stronger demonstration on the balancing test, might warrant preliminary injunctive relief, assuming the second and fourth *Winter* elements are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–1135 (9th Cir. 2011). Under this "sliding scale" method, the movant need only raise "serious questions going to the merits," but the balance of hardships must tip "sharply" in the movant's favor. *Id.* at 1131–1132; *see also Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).

**B. Analysis**

As previously mentioned, this is a unique case that starkly demonstrates the necessity of irreparable harm for an injunction to issue, even when other factors are satisfied.[4] The Court has already held that Plaintiff has a very strong likelihood of success on the merits, *Doe*, 2025 WL 1141279 at *4–*7, and that the public interest and balance of equities weighs in his favor, *id.* at *9, and the Court does not revisit those conclusions. The only question at issue here is whether,

---

[4] The Ninth Circuit's sliding scale approach allows a more lenient inquiry as to merits, but does not allow this Court to issue an injunction without a showing of likelihood of irreparable harm. *All. for the Wild Rockies*, 632 F.3d at 1135 ("*Winter* tells us that plaintiffs may not obtain a preliminary injunction unless they can show that irreparable harm is likely to result in the absence of the injunction.")

ORDER DENYING PRELIMINARY INJUNCTION (DKT. NO. 20) - 8

in light of the developments since the TRO was entered, discussed *supra*, Plaintiff still faces a likelihood of irreparable harm. At present, the Court holds he does not.

Plaintiff provides a long list of undoubtedly serious consequences that would result <u>if</u> his SEVIS is terminated again. He would be unable to complete his research and degree program. (Dkt. No. 33 at 2–3.) He would be unable to work and support himself. (*Id.* at 4–5.) He would have justified fear of removal and resulting emotional harms. (*Id.* at 2.) The Court recognized each of these harms as present and irreparable at the TRO stage, when Plaintiff's SEVIS record was terminated. *Doe*, 2025 WL 1141279 at *7–*8. But now, Plaintiff's SEVIS record is active, which Plaintiff acknowledges. (Dkt. No. 45.) Each of the harms Plaintiff invokes is premised on a contingent event: that his SEVIS record will be terminated again. That is insufficient to make a showing of irreparable harm.

Plaintiff need not establish a certainty of irreparable harm, but he needs at least a likelihood of irreparable harm—within the timeframe before the litigation is decided. In *Winter*, the Supreme Court rejected a "possibility" standard for irreparable harm and held that "[o]ur frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). This means "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Id.* (quoting Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed.1995)).

The Ninth Circuit expanded on the likelihood of irreparable injury in *Center for Food Safety v. Vilsack*, a case concerning regulation of a proprietary sugar beet strain. 636 F.3d 1166 (9th Cir. 2011). The district court issued an injunction requiring destruction of juvenile sugar beet "stecklings" after finding the permits they were planted under were likely invalid. *Id.* at

1170–1171.  The Ninth Circuit reversed, holding that even though plaintiff established injury for purposes of standing to challenge the regulatory action, plaintiff did not show irreparable injury to support an injunction.  *Id.* at 1171–1173.  The asserted irreparable injury was the possibility of genetic contamination, but the record indicated there was no possibility that the plants could pollinate before the challenged permits expired.  *Id.* at 1173.  Critically, "the district court alluded to *past* examples of contamination with other plants, but mentioned no 'continuing, present adverse effects.'"  *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992) and *Los Angeles v. Lyons,* 461 U.S. 95, 102 (1983)).  Although "[p]ast harms can tend to show the threat of a repeated injury," citing *Bates v. United Parcel Serv.,* 511 F.3d 974, 985 (9th Cir. 2007), the record did not support such a finding.  *Id.*  Rather, "[a]t the time Plaintiffs sought the preliminary injunction, none of the irreparable harms they sought to prevent were likely.  Their alleged irreparable harms hinged on future [regulatory] decisions, and nothing prevented Plaintiffs from filing a new legal challenge if and when those decisions were made."  *Id.* at 1174.

       That analysis controls here.  The Court acknowledges that the statement in Defendants' declaration, that ICE currently has "no plans" to terminate Plaintiff's SEVIS record again for the same reasons, is hardly ironclad.  But Plaintiff has not demonstrated "continuing, present adverse effects" that warrant injunctive relief.  *Vilsack*, 636 F.3d at 1173.  Plaintiff is currently able to, and will still be able to absent injunction, work and study with an active SEVIS record and not face the prospect of removal based on this particular SEVIS termination.  Just as in *Vilsack*, the irreparable harms Plaintiff cites hinge on future decisions, and the fact that he suffered the same harms in the past cannot support prospective relief.  While Defendants' declaration does not establish with certainty that there will not be a future re-termination, Plaintiff bears the burden of persuasion to establish entitlement to a PI.  *Hill*, 547 U.S. at 584.  Plaintiff needs to show at least

a likelihood that the irreparable harm will recur between now and the time this case reaches a final decision on the merits, which he has not done. *Winter*, 555 U.S. at 22. If the facts on the ground change again and the likelihood of irreparable harm becomes present, the Court can expeditiously reconsider the propriety of injunctive relief.

Plaintiff's most recent filing raises the specter of other harms, but they fare no better. First, he worries that his visa could be canceled and then his SEVIS record could be terminated under the rationale expressed in the SEVP Broadcast Message. (Dkt. No. 46 at 1–2.) Plaintiff has not yet received any notice of a visa cancellation but cannot be sure of its status. (*See id.*)[5] Regardless, Defendants are correct to point out that Plaintiff has only ever challenged the termination of his SEVIS record, not revocation of his F-1 visa. (*See id.* at 2.) Indeed, the Court has discussed at length the differences between the visa (an entry document) and the SEVIS record (which tracks compliance with program terms); they are not one in the same. *Doe 1*, 2025 WL 1208277, at *6. Plaintiff further asserts that Defendants must "ensure that the gap in time between his record being terminated and made active again will not interfere with his [Designated School Official]'s "OPT Recommendation for Post-Completion OPT." (Dkt. No. 46 at 2.) This statement does not address the impact of Defendants' declaration attesting that the SEVIS restoration has been or will be made retroactive to avoid adverse effects of a status-gap.

Further, the Court notes that it reviewed the cases provided by Plaintiff in his notice of supplemental authority (Dkt. No. 37): *Liu v. Noem*, No. 25-CV-133-SE, 2025 WL 1233892 (D.N.H. Apr. 29, 2025); *Rodriguez, v. Noem et al*, No. 3:25-CV-616 (SRU), 2025 WL 1284722 (D. Conn. May 1, 2025); *Doe 1 v. Bondi*, No. 1:25-cv-01998-VMC, Dkt. No. 43 (N.D. Ga. May 2, 2025). Of these, *Rodriguez* has the most significant discussion of the Broadcast Message and

---

[5] The visa that Plaintiff used to enter the U.S. expired in 2022. (*See* Dkt. No. 1 at 5).

Defendants' actions to restore student records, but none of these cases discuss the same facts as exist in this record, where Defendants have entered a declaration attesting not only to their present intent to not re-terminate Plaintiff's SEVIS record, but also to restore his record retroactively. Thus, they do not compel a different result.[6]

## IV    CONCLUSION

For the reasons stated, the Court denies Plaintiff's Motion for Preliminary Injunction (Dkt. No. 20.) The Court again emphasizes the narrowness of this ruling: it only holds that there is no present irreparable injury to support a preliminary injunction, and does not reach any question of mootness. As it stands now, the case will proceed towards trial and/or a final determination on the merits, without an injunction in force. Should facts change again during the litigation creating a likelihood of irreparable injury, Plaintiff can renew his request for an injunction.

Dated this 14th day of May, 2025.

David G. Estudillo
United States District Judge

---

[6] The Court additionally received a supplemental filing from Plaintiff on May 14, 2025, which includes a Department of State memo from March 2025 concerning revocation of a student's F-1 visa and a subsequent DHS Notice to Appear (Dkt. No. 47-1) and a supplemental authority, an opinion and order where a PI was granted after restoration of a student's SEVIS record, *Doe v. Noem*, No. 3:25-cv-00023, Dkt. Nos. 32 & 33 (W.D. Va. May 14, 2025) (*see* Dkt. Nos. 47-2; 47-3.) For the reasons already stated in this Order, these materials do not change the Court's analysis.